BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ELAINE A. RYAN (*Admitted Pro Hac Vice*)
VAN BUNCH (*Admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (203111)
LINDSEY M. GOMEZ-GRAY (*Admitted Pro Hac Vice*)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
eryan@bffb.com
vbunch@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone: (602) 274-1100

STEWART M. WELTMAN LLC
STEWART M. WELTMAN (*Admitted Pro Hac Vice*)
43 W. Jackson, Suite 364
Chicago, Illinois 60604
sweltman@weltmanlawfirm.com
Telephone: 312-588-5033
(Of Counsel Levin, Fishbein, Sedran & Berman)

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
ROSE F. LUZON (SBN 221544)
401 West 'A' Street, Suite 2350
San Diego, CA 92101
rluzon@sfmslaw.com
Telephone: 619-235-2416

Attorneys for Plaintiffs

(Additional Counsel on Signature Page)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANIRA ALGARIN and PATSY MURDOCK, On Behalf of Themselves and All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>v.<br><br>MAYBELLINE, LLC, A New York Limited Liability Company, d/b/a MAYBELLINE NEW YORK,<br>          Defendant. | CASE NO. 12CV3000 AJB DHB<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: April 24, 2014<br>Time: 2:00 p.m.<br>Courtroom: 3B<br>Judge: Hon. Anthony J. Battaglia<br>Magistrate Judge: Hon. David H. Bartick |

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL SUMMARY ......................................................... 4

III.  THE CASE SATISFIES THE REQUIREMENTS OF RULE 23 ............ 7

     A.   Plaintiffs Satisfy the Rule 23(a) Requirements ................................. 9

           1.   The Proposed Class is Sufficiently Numerous ........................... 9

           2.   The Claims Meet the Commonality Requirement ................... 10

           3.   The Claims Meet the Typicality Requirement .......................... 11

           4.   Plaintiffs and Their Counsel Will Adequately Represent the Class ..................................................................................... 13

     B.   Plaintiffs Satisfy the Rule 23(b)(2) Requirements ......................... 15

     C.   Plaintiffs Satisfy the Rule 23(b)(3) Requirements ......................... 16

           1.   Common Questions Predominate as to Plaintiffs' CLRA Claim ................................................................................... 18

           2.   Common Questions Predominate As to Plaintiffs' UCL Claim ................................................................................... 19

           3.   Relief Can Be Determined On A Classwide Basis .................. 22

           4.   A Class Action is Superior to Other Methods of Adjudication ......................................................................... 23

IV.  CONCLUSION ....................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997) ....................................................................16

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*
    133 S.Ct. 1184 (2013) ...............................................................18

*Ballard v. Equifax Check Servs., Inc.*
    186 F.R.D. 589 (E.D. Cal. 1999) ..................................................8

*Beck-Ellman v. Kaz USA, Inc.*
    283 F.R.D. 558, 562 (S.D. Cal. 2012) ....................................3, 14

*Blackie v. Barack*
    524 F.2d 891 (9th Cir. 1975) ......................................................23

*Brown v. Brewer*
    No. CV 06–3731, 2009 WL 1574556 (C.D. Cal. May 29, 2009) ..............14

*Bruno v. Quten Research Inst., LLC*
    80 F.R.D. 524, (C.D. Cal. 2011) ................................................20

*Carnegie v. Household Int'l, Inc.*
    376 F.3d 656 (7th Cir. 2004) ........................................................9

*Chavez v. Blue Sky Natural Beverage Co.*
    268 F.R.D. 365 (N.D. Cal. 2010) ........................................4, 13, 18

*Colgan v. Leatherman Tool Grp., Inc.*
    135 Cal. App. 4th 663 (Cal. Ct. App. 2006)................................22

*Degelmann v. Advanced Med. Optics, Inc.*
    659 F.3d 835 (9th Cir. 2011) ......................................................23

*Delarosa v. Boiron, Inc.*
    275 F.R.D. 582 (C.D. Cal. 2011)........................................9, 15, 24

**PAGE**

*Deposit Guaranty Nat. Bank v. Roper*
    445 U.S. 326 (1980) ...................................................................24

*Doe 1 v. AOL LLC,*
    719 F.Supp.2d, 1102 (N.D. Cal. 2010).......................................18

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974) ....................................................................7

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011) ...............................................10, 11

*F.T.C. v. Pantron I Corp.*
    33 F.3d 1088 (9th Cir. 1994) ...............................................17, 19

*Fine v. ConAgra Foods, Inc.*
    No. 10-01848, 2010 WL 3632469 (C.D. Cal. Aug. 26, 2010)...................11

*Guido v. L'Oreal, USA, Inc.*
    284 F.R.D. 468 (C.D. Cal. 2012)............................. 19, 21, 22, 23

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ....................................... 8, 10, 11, 13

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992) .....................................................11

*Harris v. Palm Springs Alpine Estates, Inc.*
    329 F.2d 909 (9th Cir. 1964) ......................................................9

*Herron v. Best Buy Co. Inc.*
    924 F. Supp. 2d 1161 (E.D. Cal. 2013) ........................................4

*In re Apple, AT&T iPad Unlimited Data Plan Litig.*
    No. C-10-02553, 2012 WL 2428248 (N.D. Cal. June 26, 2012) ...............21

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*
    C 10-02124, 2011 WL 6372412 (N.D. Cal. Dec. 20, 2011) .................15, 16

                                                                **PAGE**

*In re Ferrero*
        278 F.R.D. 552 (S.D. Cal. 2011) ........................................................3, 14, 18

*In re POM Wonderful*
        No. 10-2199, 2012 WL 4490860 (C.D. Cal. Sept. 28, 2012)............3, 18, 19

*In re Steroid Hormone Prod. Cases*
        181 Cal. App. 4th 145 (Cal. Ct. App. 2010)................................................20

*In re Tobacco II Cases*
        46 Cal. 4th 298 (2009)............................................................. 8, 17, 20, 21

*In re Vioxx Class Cases*
        180 Cal. App. 4th 116 (Cal. Ct. App. 2009)................................................22

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*
        722 F.3d 838 (6th Cir. 2013) ................................................................10, 17

*Johns v. Bayer Corp.*
        280 F.R.D. 551 (S.D. Cal. 2012) ..........................................................3, 131

*Johnson v. General Mills, Inc.*
        276 F.R.D. 519 (C.D. Cal. 2011)......................................................4, 18, 20

*Kasky v. Nike, Inc.*
        27 Cal. 4th 939 (2002)..................................................................................20

*Krueger v. Wyeth, Inc.*
        No. 03CV2496, 2011 WL 8971449 (S.D. Cal. March 30, 2011) ..............22

*Kwikset Corp. v. Super. Ct.*
        51 Cal. 4th 310 (2011)......................................................... 2, 17, 19, 22

*Linder v. Thrifty Oil Co.*
        23 Cal. 4th 429 (2000)....................................................................................8

*Mass. Mut. Life Ins. Co. v. Super. Ct.*
        97 Cal. App. 4th 1282 (2002)...............................................................19, 20

*McKell v. Wash. Mut., Inc.*
    142 Cal. App. 4th 1457 (Cal. Ct. App. 2006).............................19

*Meyer v. Sprint Spectrum L.P.*
    45 Cal. 4th 634 (2009)...................................................18

*Narouz v. Charter Commc'ns, LLC.*
    591 F.3d 1261 (9th Cir. 2010) ...........................................9

*O'Donovan v. CashCall, Inc.*
    278 F.R.D. 479 (N.D. Cal. 2011) ........................................16

*Ries v. Ariz. Beverages USA, LLC.*
    287 F.R.D. 523 (N.D. Cal. 2012) ........................................15

*Slaven v. BP Am., Inc.*
    190 F.R.D. 649 (C.D. Cal. 2000)..........................................9

*Stearns v. Ticketmaster Corp.*
    655 F. 3d 1013 (9th Cir. 2011) ......................................19, 23

*State v. Levi Strauss & Co.*
    41 Cal. 3d 460 (1986) ...................................................8

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ...........................................24

*Wal-Mart Stores, Inc. v. Dukes*
    131 S. Ct. 2541 (2011).  Under Rule 23(a) ................... 9, 10, 15, 21

*Weeks v. Kellogg Co.*
    No. 09-08102, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013)..................13

*Wiener v. Dannon Co., Inc.*
    255 F.R.D. 658 (C.D. Cal. 2009).....................................11, 22, 24

*Yamada v. Nobel Biocare Holding AG*
    275 F.R.D. 573 (C.D. Cal. 2011)........................................19

-v-

                                                                    **PAGE**

*Zeisel v. Diamond Foods, Inc.*
        No. 10-1192, 2011 WL 2221113 (N.D. Cal. June 7, 2011) .............4, 18, 20

*Zinser v. Accufix Research Inst., Inc.*
        253 F.3d 1180 (9th Cir. 2001) ...................................................................24


**Other Authorities**
Business & Professions Code §17200.........................................................3, 19
California Civil Code §1750 ...........................................................................3

**Rules**
Fed. R. Civ. P. 23(a) .................................................................................9, 24
Fed. R. Civ. P. 23(a)(1) .................................................................................9
Fed. R. Civ. P. 23(a)(2) .........................................................................10, 11
Fed. R. Civ. P. 23(b)(2) ................................................. 3, 7, 9, 15, 16, 24
Fed. R. Civ. P. 23(b)(3) ................................. 3, 7, 16, 18, 19, 23, 24
Fed. R. Civ. P. 23(g)(1) ...........................................................................4, 15

-vi-

# I.    INTRODUCTION

This is a textbook case for class certification.  The representation at issue was uniform throughout the Class period; was prominently featured on the front of every product package during the Class period so consumers necessarily saw it at the point-of-purchase; the parties have stipulated that the alleged deceptiveness of the representation is a common issue to the Class; and, if proven false, all Class members were harmed in that they paid a premium over other comparable products without the deceptive representation made by Maybelline as well as its competitors.

Maybelline sells 42 24-hour lipcolors and skin foundations.  The front labels of each and every one of the 30 shades of SuperStay 24HR Lipcolor™ and 12 shades of SuperStay 24HR Makeup at issue™ prominently and almost exclusively state "24 HR" and "No-Transfer."[1]  Not surprisingly given the "can't be missed" 24 hour/no transfer representation, Defendants' early consumer studies indicated that the ███████████████████ attribute was the leading reason for ████████████████ among lipcolor consumers.  *See* Ex. 1, MAYB_ALG_010078[2] (███████████████████████).  Thus, Defendants' own documents show that the 24 hour/no transfer representation was not just a "substantial factor" motivating consumer purchases – which is all the law requires to infer reliance and/or causation – but it most likely was the predominant reason consumers purchased these SuperStay Products.  Indeed, the California Supreme Court wrote: "***Simply stated: labels matter***.  The marketing industry is based on the premise that labels matter, that consumers will choose

---

[1] *See* Second Amended Complaint (D.E. #47) at n.1-2 for full listing of all SuperStay 24HR Lipcolor™ and SuperStay 24HR Makeup™ shades.  Plaintiffs reserve the right to include additional products upon discovery.

[2] All "Ex. __" references are to the Syverson Declaration.

one product over another similar product based on its label[.]" *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011) (emphasis added). Maybelline's expert, Dr. Seggev, agrees that the product packaging is "very important" to the consumer's impression of the Product. Ex. 2, Seggev Dep. 98:2-23, Jan. 10, 2014. And, Plaintiffs confirmed labels are important to consumers: "It's the packaging. It's the way that you put things out there on the shelf that call[s] people's attention, and that's what drives you to make purchases." Algarin Dep. 2-5, Oct. 30, 2013; *see also* Murdock Dep. at 100:13-20 ("I bought [the Makeup] that said it was going to stay on there 24 hours a day").[3]

Plaintiffs claim the 24 hour/no transfer representation is false, misleading and deceptive. *See, e.g.*, Ex. 1, MAYB_ALG_010044 (███████████ ██████████████████████). Whether the SuperStay Products deliver on their promise is a merits issue not yet before the Court. At issue is whether the veracity of the 24 hour/no transfer representation can be determined based on evidence common to the Class. And, as to this primary, predominating issue, the parties have stipulated that: "to the extent the Court considers the question of whether Defendants' alleged marketing claims for the Products are false and misleading to be relevant to class certification, that question is common to all putative class members, and is capable of being proved or disproved by means of evidence common to the alleged class." *See* Ex. 5, Stipulation (9/27/2013), at ¶ 1.

Also capable of being proved on a class-wide basis is that all consumers who bought the SuperStay Products were damaged as the Products sold for a premium over other lipsticks, lip glosses and foundations made by Maybelline and its competitors without the 24 hour/no transfer representation but otherwise comparable.

---

[3] All "Algarin Dep." cites are to Ex. 3 and "Murdock Dep." cites are to Ex. 4.

Case No. 12CV3000 AJB DHB
Plaintiffs' Memorandum ISO of Motion for
Class Certification

To rectify this harm and to put a stop to these false representation, Plaintiffs now seek an Order from the Court certifying a one state only Rule 23(b)(2) and Rule 23(b)(3) class defined as: All California consumers who purchased SuperStay 24HR Lipcolor™ and/or SuperStay 24HR Makeup™ for personal use until the date notice is disseminated. Plaintiffs' claims for violation of the Unfair Competition Law, Business & Professions Code §17200, *et seq*. ("UCL") and the Consumers Legal Remedies Act, California Civil Code §1750, *et seq*. (the "CLRA") are suitable for class treatment under Rule 23. Specifically: 1) all SuperStay Products' labels prominently feature the 24 hour/no transfer misrepresentation; 2) the misrepresentation is material such that an objectively reasonable consumer would rely upon it; 3) the misleading and deceptive nature of the 24 hour/no transfer representation will be proven by scientific evidence common to the Class; 4) since Maybelline continues to label the SuperStay Products with the 24 hour/no transfer misrepresentation and has no plans to stop, the Class shares the common goal of obtaining injunctive relief; and 5) class-wide damages can be determined through available records of units sold and retail prices of the SuperStay Products sold in California.

Courts across the country, and particularly in the Ninth Circuit, routinely certify litigation classes for similar false advertising label claims. *See, e.g.*, *Johns v. Bayer Corp.*, 280 F.R.D. 551, 554 (S.D. Cal. 2012) (certifying class of California consumers who purchased multivitamins labeled as providing prostate health benefits); *In re POM Wonderful*, No. 10-2199, 2012 WL 4490860, at *1 (C.D. Cal. Sept. 28, 2012) (same as to nationwide purchasers of juice products labeled as having health-related benefits); *Beck-Ellman v. Kaz USA, Inc*., 283 F.R.D. 558, 562 (S.D. Cal. 2012) (same as to purchasers of Kaz heating pads with labels that omitted product defects); *In re Ferrero*, 278 F.R.D. 552, 556 (S.D. Cal.

Case No. 12CV3000 AJB DHB
Plaintiffs' Memorandum ISO of Motion for
Class Certification

2011) (same as to purchasers of Nutella spread labeled as healthy and beneficial to children); *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 521 (C.D. Cal. 2011) (denying motion to de-certify a class of purchasers of yogurts labeled as promoting digestive health); *Zeisel v. Diamond Foods, Inc.*, No. 10-1192, 2011 WL 2221113, at *1 (N.D. Cal. June 7, 2011) (certifying nationwide class of consumers who purchased defendant's walnuts labeled as providing health benefits); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 368 (N.D. Cal. 2010) (same as to nationwide class of purchasers of beverages labeled to be of a certain origin).

Therefore, Plaintiffs respectfully request that this Court certify the proposed Class, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel, Bonnett, Fairbourn, Friedman, & Balint, P.C.; Stewart M. Weltman, LLC; and Edgar Law Firm, LLC as Class Counsel pursuant to Fed. R. Civ. P. 23(g)(1).

## II.   FACTUAL SUMMARY

In July 2009, Maybelline launched its line of SuperStay 24HR Makeup. In January 2011, Maybelline launched its line of SuperStay 24HR LipColor. *See* Ex. 8, Goldstein Decl. Exhs. A1-A2. Since the SuperStay Products' launch, Maybelline has consistently conveyed the message to California consumers that the Products provide a 24 hour, "no transfer" benefit. Specifically, Maybelline states that SuperStay 24HR Lipcolor™, with its "micro-flex formula", is a non-transfer lipcolor that will "stay" on the lips for "up to 24 hours" after just one color application. *See, e.g.,* Ex. 10 (Product Labels).[4] Maybelline states that SuperStay

---

[4] Although the 24 hour claim on the SuperStay 24HR Lipcolor™ label is prefaced by the words "up to", consumers reasonably interpret the claim as a whole to mean the lipcolor will last approximately 24 hours. *See Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1172-73 (E.D. Cal. 2013) ("multiple courts have found that 'up to' representations may materially mislead reasonable consumers") (citing cases); *see also* Ex. 6, Hastak, M. & Murphy, D., *Effects of a Bristol Windows Advertisement With an "Up To" Savings Claim on Consumer Take-Away and Be-*

24HR Makeup™, with its "micro-flex formula," is a "no transfer,"[5] "24HR Wear" foundation that provides "flexible, breathable, all day comfort" and will withstand "heat, sweat and humidity." *Id.* Neither Product provides a 24 hour/no transfer benefit. Each and every consumer who purchases Maybelline's SuperStay 24HR Products is exposed to the deceptive 24 hour/no transfer representation because it appears prominently, conspicuously, and almost exclusive of any other representations on the front of each label.

The front shots of a representative SuperStay 24HR Lipcolor™ and SuperStay Make-Up™ package appear as follows:




*liefs* (May 2012) (a recent Federal Trade Commission study found that when companies, like Maybelline, use the phrase "up to" in claims about their products, consumers believe that they will achieve the maximum "up to" results). Thus, at minimum, the "up to 24HR wear" claim is likely to deceive reasonable consumers into believing that the Product is capable of providing 24 hours of lipcolor, which it does not do.

[5] Some SuperStay 24HR Makeup™ packages contained the phrase "zero transfer" instead of "no transfer." Ex. 10 at MAYB_ALG_010015. However, slight wording variations such as this do not alter the fact that Maybelline was representing its Product was a SuperStay product with a "no transfer" benefit.

The same 24 hour/no transfer representation was confirmed and reinforced in Maybelline's ███████████████████████████████████████ ██████████████████████████████ *See* Ex. 1, MAYB_ALG_010048; Ex. 7, Goldstein Decl., at ¶ 15 ("All advertising for these Products is uniform nationwide."); Ex. 9, Goldstein Decl., Ex. B1-12 (exemplar advertisements).

Maybelline's 24 hour/no transfer representation cause consumers to believe the SuperStay Products will stay put after application for 24 hours – precisely as Maybelline intended. However, Maybelline knew, but failed to disclose, that ██████████████████████████████████████████████ *See* Ex. 1, MAYB_ALG_010044, 10111 (████████████████). Indeed, Maybelline's consumer logs are rife with customer complaints that the Products "rubbed off" and "do[ ] not last as long." *See* Ex. 11, MAYB_ALG_010025-26 (consumer logs indicating complaints such as "does not last the full 24 hr," "non transfer resistant," "does not last as long," "does not stay and rubbed off," "no more than 2 hours").

Yet, Maybelline continues to make the 24 hour/no transfer representation for which it charges consumers a hefty price premium. SuperStay 24HR LipColor retails for approximately $10-$12,[6] which is $1.00-$1.50 higher than other Maybelline lipcolors. *See* http://Maybelline.com.[7] SuperStay 24HR Makeup™

---

[6] Algarin Dep. 48:15-19; Murdock Dep. 46:1-4, Oct. 30, 2013; *see also* Ex. 8, at A3 ██████████████████████████████); Ex. 8, at A1-A2 (███████████████████); Ex. 7, Goldstein Decl., ¶ 5 (Maybelline has "one MSRP" and "that MSRP does not differentiate depending on the type of store in which the products are sold, or the store's location").

[7] Maybelline prices its SuperStay **24HR** LipColor at a $1.00 premium over its SuperStay **14HR** Lipstick – where the only difference between the two products is the number of hours it is represented to last. *See* http://www.maybelline.com/Products/Lip-Makeup/Lip-Color.aspx.

retails for approximately $11-$12,[8] which is $1.00-$3.00 higher than Maybelline's other liquid foundations. *Id.*

It is self-evident that Plaintiff and Class members were deceived by Maybelline's 24 hour/no transfer representation because they paid materially more for the SuperStay Products than other products made by Maybelline and its competitors without the deceptive long lasting representation but otherwise comparable. As demonstrated below, because Plaintiff and Class Members were all deceived by the same false 24 hour/no transfer representation and suffered the same harm, a Rule 23(b)(3) class should be certified. And, because Maybelline continues to make the false representation, a Rule 23(b)(2) class also is properly certified.

## III. THE CASE SATISFIES THE REQUIREMENTS OF RULE 23

In determining whether a class should be certified, the question is not whether plaintiff will prevail on the merits, but whether the requirements of Rule 23 have been established by a preponderance of the evidence. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1195 (2013). "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." *Id.* (citation and quotation marks omitted). Here, Plaintiffs have presented sufficient common facts for the Court to make an informed assessment and reasonable judgment that certification is appropriate.

---

[8] Murdock Dep. 69:19-21; *see also* Ex. 8 at A3 (⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛); Ex. 8, at Ex. A1-A2 (⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛).

The importance of class actions in enforcing consumer protection laws cannot be overstated. As the California Supreme Court has observed:

> [C]onsumer class actions and representative UCL actions serve important roles in the enforcement of consumers' rights. . . . These actions supplement the efforts of law enforcement and regulatory agencies. This court has repeatedly recognized the importance of these private enforcement efforts.

*In re Tobacco II Cases*, 46 Cal. 4th 298, 313 (2009) ("*Tobacco II*") (internal citations and quotation marks omitted); *see also Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'").[9] Class actions are particularly appropriate in instances where, like here, individual damages are small. *See Hanlon v.* Chrysler Corp., 150 F.3d 1011, 1023 (9th Cir. 1998) (holding that class certification by the district court was appropriate because litigation costs would, in most cases, "dwarf potential recovery" by members of the class if forced to pursue individual actions); *Linder*, 23 Cal. 4th at 435 ("By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress.") (citation and quotation marks omitted).

Finally, any doubt as to the propriety of certification should be resolved in favor of certifying because denying certification will almost certainly terminate

---

[9] *See also Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 434, 445 (2000) ("Courts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system" and noting that class actions often produce "'several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims.'") (internal citation omitted); *State v. Levi Strauss & Co.*, 41 Cal. 3d 460, 471 (1986) ("California courts have recognized that the consumer class action is an essential tool for the protection of consumers against exploitative business practices.").

the action and be detrimental to the class members. *See, e.g.*, *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis original).

"To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). Under Rule 23(a), the party seeking certification must first demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) common questions of law or fact exist; (3) the claims or defenses of plaintiffs are typical of the claims or defenses of the class; and (4) plaintiffs will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores*, 131 S. Ct. at 2548. Here, Plaintiffs satisfy each of the prerequisites of Rule 23(a), 23(b)(2) and (b)(3) with respect to the proposed Class.

**A. Plaintiffs Satisfy the Rule 23(a) Requirements**

**1. The Proposed Class is Sufficiently Numerous**

Numerosity requires that the class be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "[C]ourts have found that numerosity is satisfied when class size exceeds 40 members." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000); *see also Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 587-88 (C.D. Cal. 2011). Here, there are tens of thousands of Class

members as Maybelline's records indicate that Maybelline sold ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████. *See* Ex. 8, at A3.

## 2.     The Claims Meet the Commonality Requirement

The "commonality" prerequisite mandates that there be "questions of law or fact common to the class." Fed. R. Civ. 23(a)(2). Commonality requires that class members share a common claim that is "capable of classwide resolution," meaning that determination of the claims' "truth or falsity will resolve an issue that is central to [the claims'] validity." *Wal-Mart Stores*, 131 S. Ct. at 2551. All questions of fact and law need not be common to satisfy the rule. *Hanlon*, 150 F.3d at 1019-20. Rule 23(a)(2) has "been construed permissively," and just one common question of law or fact will satisfy the rule. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quotation marks omitted); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) ("We start from the premise that there need be only one common question to certify a class."). Common questions of law or fact include:

(a) whether the 24 hour/no transfer representation is true, or is misleading, or objectively reasonably likely to deceive;

(b) whether Maybelline engaged in false or misleading advertising;

(c) whether Maybelline's alleged conduct violates public policy;

(d) whether Maybelline's alleged conduct constitutes violations of the laws asserted;

(e) the proper measure of the loss suffered by Plaintiffs and Class members; and

(f) whether Plaintiffs and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

Because the claims arise from a uniform label, commonality is satisfied.

See *Fine v. ConAgra Foods, Inc.*, No. 10-01848, 2010 WL 3632469, at *3 (C.D. Cal. Aug. 26, 2010) ("Since Plaintiff's claims and the proposed class are based on the same misleading label on the boxes of popcorn, the Court finds that Plaintiff has sufficiently demonstrated commonality pursuant to Rule 23(a)(2)."); *see also Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664-65 (C.D. Cal. 2009) ("The proposed class members clearly share common legal issues regarding [Defendant's] alleged deception and misrepresentations in its advertising and promotion of the Products."). Eliminating any doubt that commonality is satisfied is Defendants' stipulation that the truth or falsity of Maybelline's 24 hour/no transfer representation presents a common issue capable of determination by evidence common to the Class. Ex. 5, Stipulation (9/27/2013), at ¶ 1.

### 3.     The Claims Meet the Typicality Requirement

Typicality demands that a named plaintiff's claims be "reasonably co-extensive with those of absent class members," although "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon*, 976 F.3d at 508).

Here, typicality is satisfied because Plaintiffs' and the prospective Class members' claims all arise from the same course of conduct – Maybelline's uniform 24 hour/no transfer representation. Plaintiff Algarin testified during her deposition that she read the representation on the label before she purchased the Lipcolor, and that she purchased SuperStay Lipcolor because of the "24 hours" claim. Algarin

-11-

Dep. 42:25-43:7.[10] Plaintiff Algarin also testified "the advertising said, that it was going to last 24 hours" and "it didn't last, not even close to the 24 hours." *Id*. 46:21-25, 90:18-91:14, 101:8-13, 102:10-17.[11]

Similarly, Plaintiff Murdock testified that she read the representation on the label before she purchased the SuperStay Products.[12] She purchased the SuperStay Products because she believed they were "going to stay on a lot longer" and "perform greater than a regular makeup or regular lipstick." Murdock Dep. 26:8-17. "I bought [the MakeUp] that said it was going to stay on there 24 hours a day, [ ] it was going to go through sweat, humidity and that, and it didn't." *Id*. 100:13-20. Similarly, the Lipcolor "comes off" and would "fade[]" such that "it's

---

[10] Algarin Dep. 36:4-27:2 (first heard about SuperStay in a TV advertisement that said "24 hours, the ideal that no messing, like no mess, like no reapply, like not wearing it on the clothes or anything like that, just once, once a day"); 37:22-38:1 ("The reason why I bought it was…I remembered the commercial, I saw the product, I grabbed it, I read what it said, and it just called my attention as a 24 hours."); 38:13-22, 64:19-22 (purchased it in September/November 2012 from a Walmart in Lemon Grove, California); 42:25-43:7 (purchased because of "what it was advertised [as];" "since this was just the 24 hours" "I just put it once and just don't worry about it the rest of the day"); 44:24-45:12 (prior to purchasing, she read the "24 hours" on the package appearing in "very big letters"); 48:15-19 (paid approximately $10).

[11] Algarin Dep. 103:24-104:3 ("The color did not stay the length of time that it should have stayed or that I was expecting to last because this big huge number that you see here [24], this is what calls people's attention."); *see also* 103:11-105:4.

[12] Murdock Dep. 38:16-39:9 (purchased two tubes of Lipcolor in May 2012); 39:13-15, 41:20-23; 62:18-63:23 (originally saw representation in magazines and TV ads indicating the Products were "going to stay on 24 hours"); 40:3-13, 66:1-7, 67:5-15 (based on "24-hour coverage" advertising, she went to Walgreens to look for the Products; she "saw the 24 hour," "picked up the [Makeup] package, and it also said on there that it would hold up to sweat and humidity, and I thought this is perfect, and so then I bought that," the package also said "it wouldn't transfer"); 47:8-25 (she purchased the Lipcolor because "it was going to last 24 hours"); 49:14-16, 69:19-21 (paid $10 for the Lipcolor and $12 for the Makeup); 61:2-6 (purchased SuperStay Foundation once on April 19, 2012).

-12-

not where you could wear it out in public." *Id.* 104:20-105:15.[13]

This Court's opinion in *Johns v. Bayer Corp.*, is instructive:

> [T]he Men's Vitamin packages purchased by Plaintiffs and all class members prominently and repeatedly featured the identical 'supports prostate health' claim. Plaintiffs and class members thus were all exposed to the same alleged misrepresentations on the packages and advertisements. The Court therefore finds that Plaintiffs have satisfied both the typicality and adequacy requirements.

280 F.R.D. at 557 (holding that typicality is met because plaintiffs and the proposed class "assert exactly the same claim, arising from the same course of conduct – [Defendant's] marketing campaign"); *see also Weeks v. Kellogg Co.*, No. 09-08102, 2013 WL 6531177, at *7 (C.D. Cal. Nov. 23, 2013) (case involved false and misleading statements on cereal packages wherein the court held "the named plaintiffs, like all class members, contend they were injured by defendants' false and misleading immunity claims. Consequently, the typicality requirement is met."); *Chavez*, 268 F.R.D. at 378 (finding plaintiff's claim, that a mass marketed product label was misleading, arose from the same facts and legal theory as other class members and therefore was typical).

### 4. Plaintiffs and Their Counsel Will Adequately Represent the Class

Plaintiffs "need not be perfect, only adequate." *Polanco v. Schneider Nat'l Carriers, Inc.*, CV 10-4565, Slip Op. at 4 (C.D. Cal. April 25, 2012) (citations and quotation marks omitted) (Ex. 12). A representative is adequate where: (1) there is no conflict of interest between the representative and her counsel and absent class members; and (2) the representative and her counsel will "pursue the action vigorously on behalf of the class." *Hanlon*, 150 F. 3d at 1020. Here, the interests of Plaintiffs and Class members are fully aligned because Plaintiffs are members

---

[13] *See also* Murdock Dep. 159:19-21; 160:13-15 ("number 24 hours" claim is false or misleading "if" it is supposed to mean "24 hours" and the term "nontransfer" is false or misleading because "it does come off").

of the Class they seek to represent, share the same claims and interest in obtaining relief as all Class members and have no conflicts of interest with Class members. *Beck-Ellman*, 283 F.R.D. at 566-67 (holding that adequacy is met when plaintiff and the proposed class share the same claims and interest in obtaining relief, and she is vigorously pursuing relief on behalf of the proposed class); *In re Ferrero Litig.*, 278 F.R.D. at 559 (same).

Further, both Plaintiffs testified about: their willingness to participate in the litigation; their knowledge of the case and what relief they are seeking; their role as a class representative; and how they came to be involved in the litigation.[14] Plaintiff Algarin testified that for her, it was "not about the money. It was just more about [Maybelline] telling me that it lasts 24 hours and it's not lasting the 24 hours. That was the main reason why I bought [the Product]." 53:4-12. And, Plaintiff Murdock was motivated to bring this lawsuit because: "It's about a class action of women that are coming together to say, you're going to sell me that product, you're going to put it out there for me to buy, then you need to make it good." 129:17-22. Thus, Plaintiffs meet the adequacy requirement. [15]

Plaintiffs' counsel have significant experience in prosecuting class actions, including false advertising cases, such that they meet the adequacy requirement

---

[14] *See* Algarin Dep. 24:6-24 ("I am representing other customers or persons who had made purchases and products, [ ] the product has not given the results"; she would represent other SuperStay Lipcolor consumers); 109:15-113:3 (retained counsel in November 2012 after being referred by her co-worker); 119:21-23 (seeking monetary damages for the class); *see also* Murdock Dep. 129:4-8 (seeking for everyone to "get their money back"); 130:18-25 (represents a California class); 131:2-4 (believes she can represent a class); 151:8-10 ("My deal is the fact that the product didn't work. And that is, you know, that was my deal is that to have that changed."); 166:4-17 (located her counsel online search).

[15] *See Brown v. Brewer*, No. CV 06–3731, 2009 WL 1574556, at *4 (C.D. Cal. May 29, 2009) (based on similar testimony, court found plaintiff sufficiently knowledgeable of case and role as representative to satisfy adequacy).

-14-

and should be appointed as Class counsel pursuant to Rule 23(g).[16]  *See* Ex. 13, Firm Resumes.

## B.  Plaintiffs Satisfy the Rule 23(b)(2) Requirements

Rule 23(b)(2) provides for class certification when "the party opposing the class has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief."  Fed. R. Civ. P. 23(b)(2).

This action qualifies as a class under Rule 23(b)(2) because Maybelline's uniform deceptive marketing, labeling, promotion, branding, and advertising is an action of general applicability to all members of the Class; the requested injunctive relief is reasonably necessary and appropriate upon succeeding on the merits; and prohibiting Maybelline from continuing the unlawful practice of making the false 24 hour/no transfer representation and the restitution sought is incidental to the requested injunctive relief, formulaic and objectively calculable from Defendants' records.  *See Ries v. Ariz. Beverages USA, LLC*, 287 F.R.D. 523, 540-42 (N.D. Cal. 2012) (granting (b)(2) certification of UCL and CLRA claims where class sought declaratory and injunctive relief to rectify false advertising on product packaging); *Delarosa*, 275 F.R.D. at 591-92 (Rule 23(b)(2) class certified when there was commonality as to representations about a medicine's efficacy and an injunction prohibiting such representations would "provide relief to each member of the class") (citing *Wal-Mart Stores*, 131 S. Ct. at 2557).[17]

---

[16] Rule 23(g)(1) also requires the Court to appoint Class counsel.  Specifically, Plaintiffs requests the Court appoint Bonnett, Fairbourn, Friedman & Balint, P.C., Stewart M. Weltman LLC and Edgar Law Firm, LLC.

[17] *See also In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, C 10-02124, 2011 WL 6372412, at *9 (N.D. Cal. Dec. 20, 2011) (denying decertification of Rule 23(b)(2) class where the plaintiffs primarily sought "declaratory and injunctive relief to prevent ongoing or future premium requirements notwithstanding a person's invocation of the OPP, and prevention of increases in costs of insurance and expense charges" and damages were "formulaic

-15-

As such, a class under Rule 23(b)(2) is properly certified.

## C. Plaintiffs Satisfy the Rule 23(b)(3) Requirements

Under Rule 23(b)(3), a class action may be maintained "if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is also "readily met in certain cases alleging consumer . . . fraud." *Id.* at 625. Rule 23(b)(3) demands only predominance of common questions, not exclusivity or unanimity of them. Common issues unquestionably predominate here. With respect to liability, two overriding common questions are: (1) whether Maybelline misrepresented the 24 hour/no transfer benefit of its SuperStay Products; and (2) whether the misrepresentation was likely to deceive a reasonable consumer.

The first is binary – the 24 hour/no transfer representation is either true or false. If each Class member were to pursue their claim individually, the evidence, including the science, necessary to support the individual claims would be identical in each case. *See O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 493 (N.D. Cal. 2011) (in finding predominance was satisfied, court found that each of the common questions can be proven with "generalized evidence . . . on a class-wide basis"); *see also* Ex. 5, Stipulation (9/27/2013), at ¶ 1 (whether "Defendants' alleged marketing claims" "are false and misleading" is a "common" question and "capable of being proved or disproved by means of evidence common to the

and objectively calculable from Conseco's records, and are therefore incidental to the declaratory and incidental relief sought").

Case No. 12CV3000 AJB DHB
Plaintiffs' Memorandum ISO of Motion for
Class Certification

alleged class").

The second predominating question regarding the likelihood of deception is an objective inquiry based on the materiality of the representation. *See Tobacco II*, 46 Cal. 4th at 327 (CLRA and UCL claims). Label representations are presumed to be material. *See F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir. 1994); *see also Kwikset*, 51 Cal. 4th at 328. And, the 24 hour/no transfer representation need only be a "factor" – not the "sole" factor or even a "predominating factor" – motivating the purchase. *See Tobacco II*, 46 Cal. 4th at 326-27 ("It is enough that the representation played a substantial part, and so had been a substantial factor, in influencing his decision."); *see also Kwikset*, 51 Cal. 4th at 327 (same). Here, Maybelline designed its ███████ advertising strategy with the goal of ensuring that the 24 hour/no transfer representation was material to consumers. Goal achieved. As Ms. Algarin testified about the prominent 24 hour/no transfer representation on the front of the product package: "this big huge number that you see here [24], this is what calls people's attention." Algarin Dep. 104:2-105:3; *see also,* Ex. 1, MAYB_ALG_010098 (████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████ ).

As the Supreme Court explained in *Amgen*, an inability of the plaintiff class "to prove materiality would not result in individual questions predominating. Instead, a failure of proof on the issue of materiality would end the case, given that materiality is an essential element of the class members' securities-fraud claims." 133 S. Ct. at 1191. As in *Amgen*, here too, the Class is "entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry." *Id.*; *see also In re Whirlpool Corp.*, 722 F.3d

at 859 (following *Amgen's* lead and holding that common questions predominate because evidence will either prove or disprove liability as to all class members).

In addition to the predominant liability issue, Plaintiffs and all Class members are entitled to the same legal remedies premised on the same alleged wrongdoing. Under these circumstances, and for the reasons set forth below, a Rule 23(b)(3) class is properly certified as to each consumer fraud based claim. *See Weiner*, 255 F.R.D. at 669 (predominance satisfied when alleged misrepresentation of product's benefits was displayed on every package).[18]

### 1. Common Questions Predominate as to Plaintiffs' CLRA Claim

"The CLRA makes unlawful, in Civil Code section 1770, subdivision (a), . . . various 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 639 (2009), *reh'g denied* (Apr. 1, 2009). To state a claim, a consumer must only allege that she suffered damages as a result of an act or practice declared unlawful in the CLRA. *Doe 1 v. AOL LLC*, 719 F.Supp.2d, 1102 (N.D. Cal. 2010).

Plaintiffs allege that Maybelline violated the CLRA by uniformly misrepresenting the 24 hour/no transfer benefit of the SuperStay Products on the front of each and every Product label. Thus, whether Maybelline has acted unfairly or deceptively can be resolved on a class-wide basis.

Causation and reliance can also be resolved on a class-wide basis, as no individualized inquiry is required under applicable law. Construing the CLRA

---

[18] *Johns*, 280 F.R.D. at 551 (certifying labeling claims); *In re POM Wonderful*, 2012 WL 4490860, at *1 (same); *In re Ferrero*, 278 F.R.D. at 556 (same); *Johnson*, 276 F.R.D. at 521 (same); *Zeisel*, at 2011 WL 2221113, at *1 (same); *Chavez*, 268 F.R.D. at 380 (same).

and relying on California precedents, the Ninth Circuit held that "[c]ausation, on a classwide basis, may be established by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns v. Ticketmaster Corp.*, 655 F. 3d 1013, 1022 (9th Cir. 2011) (emphasis in original; internal citations and quotation marks omitted); *see also* Guido v. L'Oreal, USA, Inc., 284 F.R.D. 468, 482 (C.D. Cal. 2012) ("'[c]ausation as to each class member is commonly proved more likely than not by materiality.'") (citing *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1292 (2002)); *In re POM Wonderful*, 2012 WL 4490860, at *5 ("[A]n inference of reliance arises as to the entire class where, as here, material misrepresentations have been made to the entire class."). As demonstrated above, label representations are presumed material. *See Pantron*, 33 F.3d at 1095-96; *Kwikset*, 51 Cal. 4th at 328. As the court in *Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573 (C.D. Cal. 2011) noted:

> An inference of reliance arises if material misrepresentations were made to persons whose acts thereafter were consistent with reliance upon the representation. Here, it is unlikely that a member of the putative class would have purchased [the product] without having been influenced by Defendant's uniform marketing claims.

*Id.* at 578 (citation and quotation marks omitted).[19]

Thus, a Rule 23(b)(3) CLRA class is properly certified.

### 2. Common Questions Predominate As to Plaintiffs' UCL Claim

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice. . . ." Cal. Bus. & Prof. Code § 17200. "The scope of the UCL is quite broad." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (Cal. Ct. App.

---

[19] *See also Cabral v. Supple, LLC,* No. 12-00085, Slip Op. at 9 (C.D. Cal. Feb. 14, 2013) (Ex. 14) ("Common sense dictates that the alleged misrepresentation (practically speaking, that the Beverage would do what it was advertised to do) would be material to not only the reasonable purchaser but every purchaser.").

2006); *see also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).  The "focus of the UCL is 'on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices.'"  *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (Cal. Ct. App. 2010), *review denied* (Apr. 14, 2010), *as modified on denial of reh'g* (Feb. 8, 2010).

To state a claim under the UCL, "it is necessary only to show that members of the public are likely to be deceived."  *Tobacco II*, 46 Cal. 4th at 312 (internal citations and quotation marks omitted).  The UCL does not require reliance or proof that any individual was actually deceived.  *Zeisel*, 2011 WL 2221113, at *9. The test is an objective one, depending on whether defendant's conduct was "likely to deceive" consumers, and is therefore amenable to class-wide adjudication.  *Id.* at *7.  Accordingly, "California courts consistently held that liability for restitution under the UCL could be imposed against a defendant without any individualized proof of causation or injury; the plaintiff needed only to show that the defendant engaged in a practice that was unlawful, unfair, or fraudulent and that the defendant may have acquired money or property by means of that practice."  *In re Steroid*, 181 Cal. App. 4th at 154; *see also Mass. Mut.*, 97 Cal. App. 4th at 1288 (certifying class based on California cases holding that "relief under the UCL is available without individualized proof of deception, reliance and injury").

Further, Courts in this district have held that "the fact that 'some consumers purchased the [product] for other reasons does not defeat a finding that' the product was marketed with a material misrepresentation, which *per se* establishes an injury."  *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 535 (C.D. Cal. 2011) (citing *Johnson*; emphasis in original).  Indeed, Defendants priced the

-20-

SuperStay Products at a premium over other products that did not claim 24 hour/no transfer benefits but were otherwise comparable. If not for the false 24 hour/no transfer representation, Plaintiff and Class members could have purchased these same products for substantially less. Thus, even if some speculative – yet to be identified – Class member did not rely at all on the 24 hour/no transfer representation, they were still injured by the misrepresentation because they paid more than they should have paid for the SuperStay Products. Recently, in *Guido,* the court expressly rejected the argument that a class that includes persons who purchased an anti-frizz serum for reasons other than the subject misrepresentations cannot be certified. 284 F.R.D. at 477 (citing *Tobacco II Cases*, 46 Cal. 4th 298, 327, 207 P.3d 20 (Cal. 2009)). The Court found that because "both named plaintiffs testified that, had they known Serum was flammable, they would not have purchased the product for the price they paid, or would not have purchased it at all," plaintiffs "demonstrate[d] that the alleged omissions and misrepresentations were material to their purchasing decision, and under the UCL, "[a] presumption, or at least an inference of reliance arises whenever there is a showing that a misrepresentation was material." *Id*. Similarly, both Plaintiffs testified that had they known the SuperStay Products did not actually provide the represented 24 hour/no transfer benefit, they would not have paid as much for them.[20] Thus, whether Maybelline's alleged misrepresentation is likely to deceive reasonable consumers will "generate common answers apt to drive the resolution of the litigation" such that it is best answered in a classwide proceeding. *Id.* at 478 (quoting *Wal-Mart Stores*, 131 S. Ct. at 2551).[21]

---

[20] *See* Algarin Dep. 45:44:14-15, 51:7-9, 52:8-11; Murdock Dep. 30:17-20; 53:54:10; 71:12-23.

[21] *See also In re Apple, AT&T iPad Unlimited Data Plan Litig*., No. C-10-02553, 2012 WL 2428248, at *4-*6 (N.D. Cal. June 26, 2012) (holding that materiality

### 3. Relief Can Be Determined On A Classwide Basis

Under both the UCL and CLRA, Plaintiffs and Class members are entitled to a refund of the premium they paid for the promised 24 hour/no transfer benefit they did not receive. In *Guido*, Judge Synder found that plaintiffs could pursue a premium price theory of damages, explaining: "California law permits plaintiffs to seek recovery of a 'price premium,' regardless of whether plaintiffs were able to quantify the premium that was paid or identify other products sold at a lower price that included a flammability warning." *Id.* at 479; *see also Kwikset*, 51 Cal. 4th at 329 ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately.").[22] As noted in *Wiener*: "with respect to the restitution permitted under the CLRA and UCL, the Court has 'very broad' discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired." 255 F.R.D. at 670-71 (citing *Colgan*, 38 Cal.

---

and reliance may be established though common proof); *Krueger v. Wyeth, Inc.*, No. 03CV2496, 2011 WL 8971449, at *4 (S.D. Cal. March 30, 2011) ("Under California law, a classwide inference of reliance is permitted when the deceptive conduct alleged is a material misrepresentation.").

[22] *See also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (Cal. Ct. App. 2009) ("The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution."); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 700 (Cal. Ct. App. 2006) (observing that a proper measure of restitution under the UCL and CLRA for making false claims that a product was made in the U.S.A. could be "the dollar value of the consumer impact or the advantage realized by" such claims compared to similar products made in China).

Case No. 12CV3000 AJB DHB
Plaintiffs' Memorandum ISO of Motion for
Class Certification

Rptr. 3d at 58-63).[23]

Here, in keeping with the applicable law, classwide damages are readily calculated using Maybelline's sales data or sales data from independent sources, such as Nielsen and IRI,[24] that track and record retail sales price and sales information for consumer products, including the SuperStay Products, as well as other comparable products manufactured by Maybelline and its competitors.[25]

And, "even if the amount of premium varies among class members, such differences in the amount of damages is insufficient to defeat class certification." *Guido*, at 479 (citing *Stearns*, 655 F.3d at 1026 ("We have held that the mere fact there might be differences in damages calculations is not sufficient to defeat class certification . . . .") (internal quotation marks and citations omitted)); *see also Blackie v. Barack*, 524 F.2d 891, 905 (9th Cir. 1975) (while individual damages will vary, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment.").

### 4. A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) superiority "'requires the court to focus on the efficiency and

---

[23] *Compare with Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 840 (9th Cir. 2011) (holding that the plaintiffs "were deceived into purchasing a product that did not disinfect as well as it was represented. Had the product been labeled accurately, they would not have been willing to pay as much for it as they did, or would have refused to purchase the product altogether. The district court's reasoning—that class members would have bought other contact lens solution, and therefore suffered no economic harm—conceived of injury in fact too narrowly").

[24] Nielsen and Symphony IRI are independent third party companies that specialize in the collection of retail price data. *See* http://www.nielsen.com/us.en.html; http://www.symphonyiri.com. Maybelline confirms that it "subscribes to IRI data in the ordinary course of its business" and "relies" on "IRI® in tracking the average retail price and overall sales volume of the Products." Ex. 7, Goldstein Decl., at ¶8.

[25] Plaintiffs have identified an expert economist, Dr. Keith Reutter, who will be able to calculate the premium price differential when it becomes appropriate.

Case No. 12CV3000 AJB DHB
Plaintiffs' Memorandum ISO of Motion for
Class Certification

economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (citation omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (superiority satisfied where certification "will reduce litigation costs and promote greater efficiency").

Liability in this action will turn on whether Maybelline's 24 hour/no transfer representation, uniform in content and placement on all Product labels, is false, misleading or deceptive such that judicial efficiency weighs in favor of a class action. *See Delarosa,* 275 F.R.D. at 594-95. Likewise, it is not economically feasible for thousands of Class members to pursue individual claims against Maybelline given that the amount in controversy is less than $12. *Id.*; *see also Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Wiener*, 255 F.R.D. at 671. Consideration of the alternatives "underscores the wisdom of a class action in this instance," because it is clear that "[i]f plaintiffs cannot proceed as a class, . . . most will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." *Wiener*, 255 F.R.D. at 672 (quotations marks omitted). Thus, there simply is no other practical method of adjudicating these claims.

## IV. CONCLUSION

Because Plaintiffs' consumer fraud claims are based on a uniform 24 hour/no transfer representation that Defendants continue to make, that every Class member necessarily saw at the point-of-sale and paid a premium for, and that existing science will prove is either true or false, this case meets Rule 23(a), 23(b)(2) and 23(b)(3) requirements. Thus, Plaintiffs respectfully request the Court certify this case as a class action, appoint Plaintiffs as Class Representatives and

Case No. 12CV3000 AJB DHB
Plaintiffs' Memorandum ISO of Motion for
Class Certification

appoint Bonnett, Fairbourn, Friedman, & Balint, P.C., Stewart M. Weltman, LLC

and Edgar Law Firm, LLC as Class Counsel, as indicated in the attached proposed

order.

Dated:  February 7, 2014

Respectfully submitted,

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

*/s/Patricia N. Syverson*
Elaine A. Ryan (*Admitted Pro Hac Vice*)
Van Bunch (*Admitted Pro Hac Vice*)
Patricia N. Syverson (203111)
Lindsey M. Gomez-Gray (*Admitted Pro Hac Vice*)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
eryan@bffb.com
vbunch@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone:  (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Manfred Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone:  (619) 756-7748

STEWART M. WELTMAN LLC
Stewart M. Weltman (*Admitted Pro Hac Vice*)
43 W. Jackson, Suite 364
Chicago, Illinois 60604
sweltman@weltmanlawfirm.com
Telephone:  312-588-5033
(Of Counsel Levin, Fishbein, Sedran & Berman)

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
Rose F. Luzon (SBN 221544)
401 West 'A' Street, Suite 2350
San Diego, CA  92101
rluzon@sfmslaw.com
Telephone:  619-235-2416

-25-

SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
James C. Shah
Natalie Finkelman Bennett
475 White Horse Pike
Collingswood, NJ 08107
Telephone: (856) 858-1770
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

EDGAR LAW FIRM LLC
John F. Edgar
1032 Pennsylvania Ave.
Kansas City, MO 64105
Telephone: (816) 531-0033
jfe@edgarlawfirm.com

Mark Schlachet
3515 Severn Road
Cleveland, OH 44118
Telephone: (216) 896-0714
mschlachet@gmail.com

*Attorneys for Plaintiffs*

-26-

# <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, declare:

That on February 7, 2014, declarant served **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** by email to:

GORDON & REES LLP
M.D. SCULLY
ALLISON F. BORTS
101 W. Broadway, Suite 2000
San Diego, CA 92101
mscully@gordonrees.com
aborts@gordonrees.com

PATTERSON BELKNAP WEBB & TYLER, L.L.P.
FREDERICK B. WARDER III
1133 Avenue of the Americas
New York, New York 10036-6710
fbwarder@pbwt.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 7, 2014, at Phoenix, Arizona.

*/s Patricia N. Syverson*
Patricia N. Syverson