PATTERSON BELKNAP WEBB & TYLER LLP
FREDERICK B. WARDER III (Admitted *Pro Hac Vice*)
1133 Avenue of the Americas
New York, New York 10036
fwarder@pbwt.com
Telephone: (212) 336-2121

GORDON & REES LLP
MILES D. SCULLY (SBN 135853)
ALLISON F. BORTS (SBN 197895)
101 W. Broadway, Suite 2000
San Diego, CA 92101
mscully@gordonrees.com
aborts@gordonrees.com
Telephone: (619) 696-6700

Attorneys for Defendant
MAYBELLINE, LLC

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANIRA ALGARIN and PATSY MURDOCK, On Behalf of Themselves and All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>MAYBELLINE, LLC, a New York Limited Liability Company, d/b/a MAYBELLINE NEW YORK<br><br>Defendants. | Case No. 12CV3000 AJB DHB<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Courtroom: 2A<br>Judge: Hon. Anthony J. Battaglia<br>Magistrate Judge: Hon. David H. Bartick |

# Table of Contents

Page

Table of Authorities ................................................................................................... ii

Preliminary Statement ................................................................................................ 1

I.     Legal Standard ................................................................................................ 2

II.    The Proposed Class Fails to Meet the Ascertainability Requirement .................. 2

       A.    Most Proposed Class Members are Uninjured Purchasers ........................ 2

       B.    Membership in the Class Cannot Reliably Be Determined ....................... 6

III.   The Proposed Class Fails To Meet the Requirements of Rule 23(b)(3) ............. 7

       A.    Materiality Cannot Be Presumed and Will Require Individual
             Inquiries ............................................................................................. 8

       B.    Plaintiffs Fail to Demonstrate a Method of Measuring Class-wide
             Damages ........................................................................................... 13

             1.    Substantial Price Variation Precludes Class-wide Damages ......... 14

             2.    Individualized Consumer Expectations and Benefits
                   Preclude Class-wide Damage Calculation ................................... 16

             3.    Plaintiffs' Rebuttal Expert Neither Meets Plaintiffs' Burden
                   nor Rebuts Dr. Ugone's Data and Conclusions ........................... 18

       C.    Maybelline's Refund Program is a Superior Method of Resolution ....... 20

IV.    The Proposed Class Fails to Meet the Requirements of Rule 23(b)(2) ............ 22

Conclusion .............................................................................................................. 25

**Table of Authorities**

Page

<small>**CASES**</small>

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  No. C 10-4387 PJH, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 27, 2014)....6, 13

*Campion v. Old Republic Home Prot. Co.*,
  272 F.R.D. 517 (S.D. Cal. 2011)....................................................8, 25

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013)..............................................................2, 7

*Chavez v. Blue Sky Natural Beverage Co.*,
  268 F.R.D. 365 (N.D. Cal. 2010) ............................................................4

*Cholakyan v. Mercedes-Benz USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2013) .................................................23, 24

*Chow v. Neutrogena Corp.*,
  No. CV-12-04624 R (JCx), 2013 U.S. Dist. LEXIS 17670
  (C.D. Cal. Jan. 22, 2013) ....................................................4, 9, 10

*Colapinto v. Esquire Deposition Servs., LLC*,
  No. CV 09-07584 SJO (PLAx), 2011 U.S. Dist. LEXIS 30814
  (C.D. Cal. Mar. 8, 2011) ..........................................................5

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)..................................................passim

*Deitz v. Comcast Corp.*,
  No. C 06-06352 WHA, 2007 U.S. Dist. LEXIS 53188
  (N.D. Cal. July 11, 2007) ..........................................................2, 7

*Drimmer v. WD-40 Co.*,
  Case No. 06-CV-900 W (AJB), 2007 U.S. Dist. LEXIS 62582
  (S.D. Cal. Aug. 24, 2007) ..........................................................23

*Edwards v. Ford Motor Co.*,
  No. 11-CV-1058-MMA(BLM), 2012 U.S. Dist. LEXIS 81330
  (S.D. Cal. June 12, 2012)..........................................................8, 9

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011)................................................................................24

*Gonzalez v. Proctor & Gamble Co.*,
    247 F.R.D. 616 (S.D. Cal. 2007)....................................................................23, 25

*Guido v. L'Oreal, USA, Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012) ........................................................................13

*Guido v. L'Oreal, USA, Inc.*,
    No. CV 11-1067 CAS (JCx), 2013 U.S. Dist. LEXIS 94031
    (C.D. Cal. July 1, 2013) ......................................................................................13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)..............................................................................20

*Hodes v. Van's Int'l Foods*,
    CV 09-1530, 2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009) ..................7

*Hovsepian v. Apple, Inc.*,
    No. 08-5788 JF (PVT), 2009 U.S. Dist. LEXIS 117562
    (N.D. Cal. Dec. 17, 2009) .....................................................................................5

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
    No. C 10-02124 SI, 2011 U.S. Dist. LEXIS 146139
    (N.D. Cal. Dec. 20, 2011) ....................................................................................24

*In re Ferrero*,
    278 F.R.D. 552 (S.D. Cal. 2011)............................................................................4

*In re Flash Memory Antitrust Litig.*,
    No. C 07-0086 SBA, 2010 U.S. Dist. LEXIS 59491 (N.D. Cal. June 9, 2010)....2, 7

*In re Google AdWords Litig.*,
    No. 08-CV-3369 EJD, 2012 U.S. Dist. LEXIS 1216 (N.D. Cal. Jan. 5, 2012) ..8, 18

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) ......................................................................13, 20

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (Ct. App. 2009) ...................................................8, 9, 10, 19

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012)............................................................................4

-iii-

*Johnson v. Harley-Davidson Motor Co. Group, LLC*,
  285 F.R.D. 573 (E.D. Cal. 2012)............................................................................9

*Leyva v. Medline Indus.*,
  716 F.3d 510 (9th Cir. 2013)................................................................................13

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007).........................................................................23, 25

*Marcus v. BMW of N. Am., LLC*,
  687 F. 3d 583 (3d Cir. 2012)...............................................................................2, 7

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012).................................................................................2

*Moheb v. Nutramax Laboratories, Inc.*,
  No. CV 12-3633-JFW (JCx), 2012 U.S. Dist. LEXIS 167330
  (C.D. Cal. Sept. 4, 2012)....................................................................................5, 24

*Red v. Kraft Foods, Inc.*,
  No. CV 10-1028-GW (AGRx), 2012 U.S. Dist. LEXIS 186948
  (C.D. Cal. Apr. 12, 2012)......................................................................................16

*Ries v. Ariz. Beverages USA, LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) .........................................................................24

*Smith v. Microsoft Corp.*,
  No. 11-CV-1958 JLS (BGS), 2014 U.S. Dist. LEXIS 12799
  (S.D. Cal. Jan. 28, 2014).......................................................................................20

*Sotelo v. Medianews Group, Inc.*,
  207 Cal. App. 4th 639 (Ct. App. 2012) ..................................................................7

*Stearns v. Select Comfort Retail Corp.*,
  763 F. Supp. 2d 1128 (N.D. Cal. 2010).............................................................5, 22

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011)..............................................................................5, 8

*Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145, 157 (Cal. Ct. App. 2010) ..................................................9

*Thompson v. Auto. Club of S. Cal.*,
  217 Cal. App. 4th 719 (2013).................................................................................7

-iv-

*Tourgeman v. Collins Fin. Servs., Inc.*,
   No. 08-CV-1392 JLS (NLS), 2011 U.S. Dist. LEXIS 122422
   (S.D. Cal. Oct. 21, 2011)........................................................................................7

*Turcios v. Carma Labs., Inc.*,
   No. CV 12-8487-JGB, 2014 U.S. Dist. LEXIS 12938
   (C.D. Cal. Jan. 7, 2014) ........................................................................................22

*Util. Consumers' Action Network v. Sprint Solutions, Inc.*,
   259 F.R.D. 484 (S.D. Cal. 2009)...........................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)................................................................................. passim

*Webb v. Carter's Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) ...............................................................9, 10, 22

*Weiner v. Snapple Beverage Corp.*,
   No. 07 Civ. 8742 (DLC), 2011 U.S. Dist. LEXIS 6094
   (S.D.N.Y. Jan. 21, 2011).......................................................................................16

*Xavier v. Philip Morris USA, Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011).............................................................2, 6

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001)...............................................................................23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23.............................................................................................................2

Fed. R. Civ. P. 23(b)(3)........................................................................................7, 13, 20

Fed. R. Civ. P. 23(a) .......................................................................................................8

Fed. R. Civ. P. 23(b)(2)..................................................................................22, 23, 24, 25

## Preliminary Statement

Unlike many putative class actions alleging consumer deception, this case concerns product claims that are readily and immediately assessed by purchasers. The two products at issue are mass-market cosmetics, a foundation makeup and a lipcolor. The claims at issue address the products' duration ("24-hour"). Most labeling claims, whether about health, ingredients, or provenance, require consumers to take them on faith because the delivery of the advertised benefits cannot be readily observed by consumers upon purchase. But in this case, purchasers of the two cosmetic products at issue could and did immediately assess whether the products met their duration expectations. Unrebutted proof (in the form of data from two surveys, testimony and records from the parties, and expert evidence) shows that most purchasers either had no duration expectation at all or were satisfied with the products. This fact alone renders class certification inappropriate.

Also unlike many such actions, the uncontroverted class-wide evidence in this case rebuts the legal presumptions of materiality and reliance on which Plaintiffs' class certification motion depends. The evidence shows that more purchasers had duration expectations that are inconsistent with Plaintiffs' claims than had expectations consistent with Plaintiffs' claims, and that very few purchasers had 24-hour expectations. In fact, fewer than 14% of purchasers could have been injured in the manner alleged by Plaintiffs, and fewer than 5% of purchasers identified a 24-hour duration expectation as a reason for purchasing the products.

Because the unrebutted evidence in this case (including additional expert evidence and a pricing analysis) demonstrates (1) the predominance of individual issues regarding materiality and loss causation, (2) Plaintiffs' inability to establish class-wide injury and damages under *Comcast*, and (3) the existence of a superior method of resolving Plaintiffs' dispute with Maybelline, class certification should be denied.

# I.    Legal Standard

The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Fed. R. Civ. P. 23.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("*Dukes*").  Before certifying a class, the trial court must conduct a rigorous analysis to determine whether these requirements are met and whether there is evidentiary proof establishing a class-wide method of awarding relief consistent with the plaintiffs' theory of liability.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) ("*Comcast*"); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

# II.    The Proposed Class Fails to Meet the Ascertainability Requirement

Along with Rule 23(a)'s explicit requirements, Plaintiffs must also "demonstrate that an identifiable and ascertainable class exists." *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).  Class members must be identifiable by objective criteria "without extensive and individualized fact-finding or mini-trials." *Carrera v. Bayer Corp.*, 727 F.3d 300, 303-04 (3d Cir. 2013); *Marcus v. BMW of N. Am., LLC*, 687 F. 3d 583, 592-93 (3d Cir. 2012).  "Where information necessary to ascertain the class is not readily available, class certification is inappropriate." *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 U.S. Dist. LEXIS 59491, at *67 (N.D. Cal. June 9, 2010) (citing *Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2007 U.S. Dist. LEXIS 53188, at *8 (N.D. Cal. July 11, 2007)).  Courts must engage in a "rigorous" ascertainability analysis, and it is not sufficient for a plaintiff to "merely propose a method" of ascertaining class membership with no proof of its likelihood of success.  *Carrera*, 727 F.3d at 306.

## A.    Most Proposed Class Members are Uninjured Purchasers

Plaintiffs' proposed class is defined as "[a]ll California consumers" who

purchased the SuperStay Products for personal use.[1]  This class would include many purchasers whose duration expectations were satisfied, and many more who either had no duration expectations or whose duration expectations were different from Plaintiffs' alleged expectations.  None of these class members suffered the injury Plaintiffs claim to have suffered as a result of the 24-hour duration claims challenged in their Second Amended Complaint (the "Challenged Claims").

   As demonstrated by the survey and report of Dr. Eli Seggev,[2] and as corroborated by the Maybelline Early Trier Study[3] on which Plaintiffs rely, a large percentage of the potential class of SuperStay purchasers is comprised of repeat purchasers.  Dr. Seggev surveyed 251 purchasers of the SuperStay 24 LipColor ("LipColor") and 249 purchasers of the SuperStay 24HR Makeup ("Makeup"). (Seggev Report ¶¶ 63, 83).  His survey found that 45% of LipColor purchasers and 32% of Makeup purchasers were repeat buyers who "cannot be considered to have been misled or injured by the duration claims" identified in Plaintiffs' complaint.  (*Id.* at ¶¶ 49-50, Tables 1, 6).[4]  This is because purchasers of products like those at issue in this case can easily and immediately determine whether the products' performance meets their expectations.  Unlike products such as dietary supplements whose ingredients or benefits cannot readily be ascertained by purchasers, each purchaser of

---

[1] *See* Plaintiffs' Memorandum in Support of Motion for Class Certification ("Certification Memo") at 3.  Maybelline interprets Plaintiffs' proposed class to include only California residents who bought the Products in California.  If Plaintiffs seek certification of a broader class (*e.g.*, purchasers residing outside California who purchased in California, or residents of California who purchased outside California), the class fails due to individual choice-of-law issues as well as lack of ascertainability.

[2] Dr. Seggev's report ("Seggev Report") is attached as Exhibit B to the Declaration of Dr. Eli Seggev dated March 5, 2014.

[3] Maybelline's Early Trier Study ("Early Trier") is attached as Exhibit 1 to the Declaration of Patricia N. Syverson dated February 7, 2014.

[4] Maybelline's Early Trier Study similarly found that, ███████████████████ ██████████████████████. (Early Trier at MAYB_ALG_010163).

a SuperStay Product knew right away how long it lasted for her in the context of her individual habits and usage. (*Id.*) For this reason, a consumer's decision to repurchase the product (often multiple times) demonstrates that her expectations were met, that the product was worth its purchase price to her, and that she was therefore a satisfied and uninjured purchaser. (*Id.*); *see Chow v. Neutrogena Corp.*, No. CV-12-04624 R (JCx), 2013 U.S. Dist. LEXIS 17670, at *3-5 (C.D. Cal. Jan. 22, 2013) ("*Neutrogena*") (in case involving claims for anti-wrinkle cream, certification denied in part based on high incidence of repeat purchase).

Plaintiffs assert that courts "across the country… routinely certify" classes challenging "similar" labeling claims. (Certification Memo at 3-4). Plaintiffs cite seven cases for this proposition – but **not one** involves a labeling claim that a consumer would be able to assess herself upon use of the product. *See, e.g., Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012) (involving health claim on product label); *In re Ferrero*, 278 F.R.D. 552 (S.D. Cal. 2011) (involving health/ingredient claim on product label); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) (involving provenance claim on product label).

In addition to repeat purchasers, many one-time purchasers of the SuperStay Products are also uninjured. Dr. Seggev's survey shows that a significant percentage of LipColor and Makeup purchasers had no expectation whatsoever about how long the Products would last when they made their purchase decisions. (Seggev Report ¶¶ 69-70, 89-90; Tables 3, 8; Exh. 12, Tables 3a, 8a). These individuals could not have been injured by the Challenged Claims because their purchase decisions were made without regard to product duration. (*Id.* at ¶¶ 78, 98). Finally, Dr. Seggev's survey shows that only a small minority of purchasers (9% for the Lipcolor; 14% for the Makeup) could conceivably have been injured in the manner alleged by Plaintiffs

because they had 24-hour duration expectations.  (*Id.* at ¶¶ 75, 81, 95, 101, 107).[5]

Because there is no reliable method to identify and exclude uninjured purchasers from Plaintiffs' proposed class, and because the survey evidence establishes that uninjured purchasers constitute a majority of Plaintiffs' proposed class members, the class is overbroad and not ascertainable.  In *Stearns v. Ticketmaster Corp.*, the Ninth Circuit considered a similarly overbroad class comprised of all Ticketmaster.com users who were charged for enrollment in a rewards program but did not take advantage of its benefits.  655 F.3d 1013, 1018 (9th Cir. 2011).  The Ninth Circuit found that the class was overbroad because there were "myriad reasons" a consumer might not take advantage of each feature of a product he or she paid for, and it would have been inappropriate to have "swept [in] willy-nilly" uninjured class members.  *Id.* at 1024.  Other California courts faced with similar ascertainability problems have come to the same conclusion.  *See, e.g., Moheb v. Nutramax Laboratories, Inc.*, No. CV 12-3633-JFW (JCx), 2012 U.S. Dist. LEXIS 167330, at *7 (C.D. Cal. Sept. 4, 2012) (class not ascertainable because satisfied, uninjured customers who derived benefit from product included); *Colapinto v. Esquire Deposition Servs., LLC*, No. CV 09-07584 SJO (PLAx), 2011 U.S. Dist. LEXIS 30814, at *11-12 (C.D. Cal. Mar. 8, 2011) (class not ascertainable because unharmed consumers included); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010) (same); *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 U.S. Dist. LEXIS 117562, at *18 (N.D. Cal. Dec. 17, 2009) (class not ascertainable because consumers who experienced no problems with products included).

In light of Plaintiffs' theory of recovery in this case, the proposed class fails to satisfy the ascertainability standard because a majority of proposed class members

---

[5] Moreover, any such purchasers may already have received compensation for any injury through Maybelline's refund program.  (*See infra* pp. 21-22 and Declaration of Patricia Erin DeVincenzo dated February 28, 2014 ("DeVincenzo Decl.") at ¶¶ 7-11).

have suffered no compensable injury and because only a small minority could have been injured in the manner alleged by Plaintiffs.

### B. Membership in the Class Cannot Reliably Be Determined

Plaintiffs do not (and cannot) offer a reliable method by which to determine class membership. It is undisputed that consumers are unlikely to have documentary proof of purchase. Both Algarin and Murdock admitted in depositions that they did not retain receipts proving that they purchased the SuperStay Products. (Murdock Tr. 50:7-51:7, 69:22-23; Algarin Tr. 49:20-51:5). Indeed, both named Plaintiffs struggled to recall a number of details about their purchase and use of the Products, including prices and directions for use. (Murdock Tr. 49:14-16, 52:22-25, 69:19-21; Algarin Tr. 48:15-19; 105:17-106:17). And because Maybelline does not sell the SuperStay Products directly to consumers, Maybelline does not have purchaser lists or any other way of identifying who purchased the Products or how much any individual purchaser paid. (Goldstein Decl. ¶¶ 4-5).[6] Plaintiffs provide no additional evidence that could reliably establish class membership.

Because the vast majority of putative class members will have no records establishing that they actually purchased the SuperStay Products, certifying this class would oblige the parties and the Court to accept the representation of any individual who claims to have purchased any of the SuperStay Products. As many courts have recognized, such an obligation would defeat a defendant's ability to challenge the proof used to demonstrate class membership or investigate potential fraud. *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 U.S. Dist. LEXIS 1640, at *8-11 (N.D. Cal. Jan. 27, 2014) (in labeling case, refusing to certify class because not ascertainable); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011) (discussing "incentives" to associate with successful class); *see also*

---

[6] The Declaration of Ali Goldstein and exhibits ("Goldstein Decl.") are attached as Exhibits 7-8 to the Declaration of Patricia N. Syverson dated February 7, 2014.

*Marcus*, 687 F.3d at 594 (requiring defendants to accept declarations of class membership as true would have "serious due process implications"); *Carrera*, 727 F.3d at 307 (defendant has right to challenge proof of class membership similar to right to challenge elements of plaintiff's claim); *cf. Sotelo v. Medianews Group, Inc.*, 207 Cal. App. 4th 639, 647-48 (Ct. App. 2012) (class not ascertainable where proving membership would involve sworn statements or testimony, evaluation of circumstantial evidence, and credibility determinations).[7]

In this case, because of the admitted lack of documentary evidence of class membership, because Plaintiffs have offered no method by which injured purchasers can be reliably identified, and because Maybelline has adduced affirmative proof of the existence of numerous uninjured purchasers within Plaintiffs' proposed class, the class is not ascertainable.

## III. The Proposed Class Fails To Meet the Requirements of Rule 23(b)(3)

Plaintiffs have failed to show that common questions of fact and law predominate over any questions affecting individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating a dispute over the Challenged Claims. Fed. R. Civ. P. 23(b)(3); *Dukes*, 131 S. Ct. at 2541.

The predominance inquiry under Rule 23(b)(3) asks whether issues "subject to generalized proof… predominate over those issues that are subject only to individualized proof." *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392 JLS

---

[7] Other California courts have refused to certify classes due to similar or identical barriers to ascertainability. *See, e.g., In re Flash Memory Antitrust Litig.*, 2010 U.S. Dist. LEXIS 59491, at *68-69 (class not ascertainable due to administrative infeasibility of identifying class members); *Hodes v. Van's Int'l Foods*, CV 09-1530, 2009 U.S. Dist. LEXIS 72193, at *11 (C.D. Cal. July 23, 2009) (case not manageable under 23(b)(3) due to challenges in identifying purchasers and "very low" likelihood that purchasers saved receipts); *Deitz*, 2007 U.S. Dist. LEXIS 53188, at *25 (class not ascertainable because "no easy way to determine" membership); *Thompson v. Auto. Club of S. Cal.*, 217 Cal. App. 4th 719, 732 (2013) (individual inquiries necessary to identify which class members had valid claim).

(NLS), 2011 U.S. Dist. LEXIS 122422, at *43 (S.D. Cal. Oct. 21, 2011) (citation omitted). This requirement is "[i]f anything… even more demanding than Rule 23(a)." *Comcast*, 133 S. Ct. at 1432. In this case, common issues do not predominate because (1) the evidence rebuts any presumption of class-wide materiality, reliance, or causation and (2) Plaintiffs have not shown (and cannot show) that damages can be calculated and proven on a class-wide basis as required by *Comcast*.

## A. Materiality Cannot Be Presumed and Will Require Individual Inquiries

Plaintiffs' claims under the UCL require them to "establish a causal link between a defendant's business practice and the alleged harm." *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 532 (S.D. Cal. 2011).[8] To do so on a class-wide basis, they must prove that consumers were likely to be deceived into purchasing the product by material promotional claims. *Stearns*, 655 F.3d at 1020 (citation omitted); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (Ct. App. 2009). Plaintiffs' claims under the CLRA also require proof of causation, as well as reliance and damages.[9] *Campion*, 272 F.R.D. at 537. Under the CLRA, causation and reliance may be presumed on a class-wide basis only if Plaintiffs can prove that the challenged benefit or claim was material to class members. *Edwards v. Ford Motor Co.*, No. 11-CV-1058-MMA(BLM), 2012 U.S. Dist. LEXIS 81330, at *22-25 (S.D. Cal. June 12, 2012).

In the context of both UCL and CLRA class actions, to gauge class-wide materiality, courts consider whether a typical or "reasonable" consumer would have been misled into purchasing the product because of the challenged claims. *Stearns*,

---

[8] *See In re Google AdWords Litig.*, No. 08-CV-3369 EJD, 2012 U.S. Dist. LEXIS 1216, at *30 (N.D. Cal. Jan. 5, 2012) (internal citation omitted) (UCL requires that "plaintiffs suffer injury in fact").

[9] Like the UCL, "the CLRA requires each class member to have an actual injury caused by the unlawful practice." *Stearns*, 655 F.3d at 1022.

655 F.3d at 1020, 1022.  Whether or not claims were material to a reasonable consumer is a question of fact.  *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (Cal. Ct. App. 2010).  Where the evidence shows that actual consumer expectations varied widely, and that individual issues of reliance, materiality, or causation divide potential class members into disparate groups, sub-groups, and cross-groups, the challenged claims cannot be presumed material to a reasonable consumer and "individual issues as to materiality predominate."  *Edwards*, 2012 U.S. Dist. LEXIS 81330, at *23-24; *see also Neutrogena*, 2013 U.S. Dist. LEXIS 17670, at*4-5 (refusing to certify class in part because reliance issues differed for repeat purchasers versus one-time purchasers); *Vioxx*, 180 Cal. App. 4th at 129.

Many courts have declined to certify putative UCL and CLRA classes when presented with evidence of consumer behavior that, as in this case, shows that the challenged claims were not material to a typical purchaser.  In *Edwards*, after acknowledging the "reasonable consumer" standard, the court reviewed the evidence, including an expert report concerning purchasers' expectations and decision making.  2012 U.S. Dist. LEXIS 81330 at *25-32.  The court found that the evidence demonstrated that materiality varied from consumer to consumer, making certification inappropriate for both UCL and CLRA claims.  *Id.* at *31-33.

Likewise, in *Johnson v. Harley-Davidson Motor Co. Group, LLC*, defendants' expert reports established that motorcycle purchasing behavior and expectations varied from consumer to consumer.  285 F.R.D. 573, 580-81 (E.D. Cal. 2012).  Acknowledging that the "reasonable consumer standard" can satisfy the element of materiality, the court refused to certify the class because the evidence showed that "reasonable consumers" would consider a number of factors material to their purchase decision and that materiality was not subject to common proof.  *Id.* at 581.

In *Webb v. Carter's Inc.*, the court reviewed defendants' evidence regarding consumer expectations, reliance, and materiality. 272 F.R.D. 489, 502-503 (C.D. Cal.

2011).  Applying the "reasonable consumer" standard, it found that individualized reliance and materiality issues predominated and therefore precluded certification of CLRA or UCL classes.  *Id.*

Similarly, in *Vioxx*, the court reviewed evidence regarding a variety of patient-specific factors and found that many patients would not have relied on defendant's statements.  180 Cal. App. 4th at 133-134.  Because materiality varied from user to user, the court found that there were individualized predominance issues, and it affirmed the denial of class certification for CLRA claims.  *Id.*

Finally, in *Neutrogena*, after reviewing evidence of consumer expectations and acknowledging that material misrepresentations can lead to an inference of class-wide reliance, the court found that the evidence made such an inference inappropriate. 2013 U.S. Dist. LEXIS 17670 at *3-5.  It found that individualized questions regarding whether the challenged advertisements were misleading to purchasers (and repeat purchasers in particular) and whether purchasers would have viewed the advertising claims as material predominated and made certification impossible under Rule 23.  *Id.*  As a result, the court refused to certify a UCL and CLRA class alleging that a wrinkle cream did not provide the benefits advertised on its label.  *Id.*

Here, as in the cases detailed above, Maybelline has offered unrebutted survey data and expert evidence about purchaser expectations and behavior.[10]  Dr. Seggev's survey was conducted among potential class members, and it demonstrates that very few purchasers shared Plaintiffs' duration expectations, Plaintiffs' product dissatisfaction, or Plaintiffs' claimed injury.

---

[10] Plaintiffs did not rebut Dr. Seggev's survey or report with any market research or expert testimony.  Though Plaintiffs' rebuttal expert comments on Dr. Seggev's survey, he admits that he is "not a survey expert" and has "no training as a survey expert."  (Deposition Transcript of Dr. Keith Reutter ("Reutter Tr."), attached as Exhibit A to the Declaration of Frederick B. Warder III dated March 6, 2014, at 216:13-18).  Dr. Reutter also acknowledged that his minor methodological criticisms do not undermine Dr. Seggev's conclusions.  (Reutter Tr. 219:6-14; 220:17-224:11).

First, as noted above in relation to the ascertainability of Plaintiffs' proposed class, 45% of LipColor purchasers and 32% of Makeup purchasers have shown their satisfaction with the SuperStay Products by purchasing them repeatedly. This evidence alone rebuts any presumption that the duration claims challenged by Plaintiff could have caused injury to the entire proposed class. (Seggev Report ¶¶ 49-50, 65-66, 76, 85-86, 96, 105; Tables 1, 6, 11).

Second, many consumers purchased these Products with no duration expectations at all. Of all purchasers, between 16% (LipColor) and 21% (Makeup) bought the Products once and reported no duration expectations. When these purchasers are added to those who purchased the Products more than once, the survey data demonstrate that duration expectations were either met or were immaterial to a majority of potential class members. (Seggev Report ¶¶ 70, 78, 90, 98, 106; Tables 3, 8, 11; Exh. 12 at Tables 3a, 8a).

Third, the survey data show that duration expectations were not common among all, or even most, potential class members. Contrary to Plaintiffs' allegations of commonality, more purchasers had non-specific duration expectations than expected a particular number of hours. Among those who did expect a specific number of hours, more expected the Products to last less than 24 hours than expected them to last for the 24-hour period alleged by Plaintiffs. Across all duration-related questions, more purchasers of both products had duration expectations that were **inconsistent** with Plaintiffs' allegations than were consistent with them, and only a small percentage of potential class members had 24-hour duration expectations at the time of purchase. (*Id.* at ¶¶ 71-74, 79-82, 91-94, 99-102, 106-108; Tables 4-5, 9-10, 11; Exh. 12 at Tables 4a-5a, 9a-10a).[11]

---

[11] Plaintiffs cite Maybelline's Early Trier Study on the first page of their brief, stating that it "indicated that ███████████████████ attribute was the leading reason ███████████████ among" LipColor consumers. (Certification Memo at 1). But Plaintiffs fail to note that these respondents are people ██████

Finally, the survey data demonstrate that duration expectations in general were far from a predominant reason for purchase (19% of all LipColor purchasers, 10% of all Makeup purchasers), and that a negligible number of purchasers (1% of all LipColor purchasers, 4% of all Makeup purchasers) bought the product because of the 24-hour duration expectation that Plaintiffs allege was common to the entire class. On this basis as well on the other survey data, Dr. Seggev concluded that 24-hour duration expectations were not a primary purchase driver for the SuperStay Products. (Seggev Report ¶¶ 68, 77, 88, 97, 105; Tables 2, 7, 11; Exh. 12, Tables 2a, 7a).[12]

In this case, Plaintiffs' UCL and CLRA class claims hinge entirely on their assertion that a typical or "reasonable" consumer of the SuperStay Products was misled by the Challenged Claims into purchasing the Products. But Dr. Seggev's survey and his expert testimony provide uncontradicted evidence that, among the members of the proposed class, most purchasers' duration expectations were flatly inconsistent with Plaintiffs' class allegations. This evidence rebuts Plaintiffs' allegations that the "reasonable consumer" (i) viewed the statements as material (because so few purchasers shared Plaintiffs' alleged duration expectations at the time of purchase) and (ii) was injured by the statements (because a majority of purchasers were not injured at all by duration claims and only a small minority could have been injured in the manner alleged by Plaintiffs). Thus, the evidence in this case either shows that individual issues relating to reliance, causation and injury preclude a finding of predominance, or else it shows that the typical or reasonable consumer was not misled by the Challenged Claims into purchasing the SuperStay Products.

_____

████████████████████████████████████████████████
████████████████████████████████████████████████
. (Early Trier at MAYB_ALG_010078).

[12] Maybelline's Early Trier Study corroborates Dr. Seggev's conclusion, showing that ████████████████████████████████████████████████ to be ████████████████████████████████████████████████
. (Early Trier at MAYB_ALG_010098).

-12-

## B. Plaintiffs Fail to Demonstrate a Method of Measuring Class-wide Damages

The recent decision by the United States Supreme Court in the *Comcast* case requires a class action plaintiff to translate "the legal theory of the harmful event into an analysis of the economic impact of that event." *Comcast*, 133 S. Ct. at 1435 (emphasis omitted); *see also Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013) (plaintiffs must be able to show that class-wide damages stemmed from the defendant's actions that created the legal liability). At the class certification stage, "any model supporting a plaintiff's damages case must be consistent with its liability case," and the plaintiff bears the burden of proving that linkage even if it requires inquiry into the merits of the plaintiff's case at the class certification stage. *Comcast*, 133 S. Ct. at 1432-33. Thus, *Comcast* requires that plaintiffs proffer evidence "demonstrating the existence of a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability" in order to certify a Rule 23(b)(3) class. *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 U.S. Dist. LEXIS 1640, at *38 (N.D. Cal. Jan. 7, 2014) (citations omitted) (class certification denied for failure to satisfy *Comcast*). Or, as the D.C. Circuit succinctly put it, "[n]o damages model, no predominance, no class certification." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013).

Plaintiffs in this case have offered no evidence at all of whether and how they will be able to measure damages on a class-wide basis.[13] Plaintiffs did not disclose any affirmative expert reports, and have repeatedly stated that they do not intend to

---

[13] Plaintiffs fail to discuss or even cite *Comcast* in their motion for class certification. They instead cite *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) for the proposition that "relief can be determined on a classwide basis" based on a price premium theory. (Certification Memo 22-23). But in a later stage of that same case, the Central District declined to certify a California class because plaintiffs failed to satisfy their burden under *Comcast*. *Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS (JCx), 2013 U.S. Dist. LEXIS 94031, at *42-46 (C.D. Cal. July 1, 2013).

rely on any expert testimony in connection with the Court's class certification determination. As a result, Plaintiffs have failed to establish the availability of an economic model under which their alleged damages could be measured on a class-wide basis. For this reason alone, Plaintiffs' proposed class fails to satisfy the requirements of *Comcast.*

Nor could Plaintiffs cure this defect. As shown by the price analysis and testimony of Maybelline's econometrics expert, Dr. Keith Ugone, individual issues of injury and damages predominate over common issues under Plaintiffs' theory of recovery.[14] The evidence establishes two principal reasons why injury cannot be demonstrated or measured on a class-wide basis: (1) calculating class-wide injury is precluded by the substantial variation in the prices paid by individual purchasers for the Products and their competitors; and (2) because many purchasers were satisfied with their purchase, and because purchasers' reasons for purchase varied, it would be necessary to examine purchasers' individual expectations in order to conclude whether or not, and to what extent, they were injured from an economic perspective.

### 1. Substantial Price Variation Precludes Class-wide Damages

Dr. Ugone conducted an analysis of retail sales and pricing data for the SuperStay Products. He identified wide variations in the retail prices paid by purchasers that would make it impossible for putative class members' claims to be calculated reliably using common proof. (Ugone Report at ¶ 37).

First, the price paid for the SuperStay Products varies by sales channel, or type of store in which the product was purchased. These channels include grocery stores, drug stores, and Wal-Mart. (*Id.* at ¶ 44). In 2012, average prices varied by up to 19.4% depending on sales channel for the LipColor and by up to 18% for the Makeup. (*Id.* at Table 5). Generally, prices for the LipColor were 15-19% higher, and Makeup

---

[14] Dr. Ugone's reports are attached as Exhibit B ("Ugone Report") and Exhibit C ("Ugone Supplement") to the Declaration of Dr. Keith R. Ugone dated March 5, 2014.

prices were 7-21% higher, in drug stores than in Wal-Mart.  (*Id.* at ¶ 45).

The prices paid by individual consumers for the SuperStay Products also varied by retailer within the same channel.  For example, within the drug store channel, prices paid by purchasers at CVS differed from those at Walgreens and Rite Aid.  This is a result, in part, of the fact that retailers set the price for the Products, not Maybelline.  (*Id.* at ¶ 46; Goldstein Decl. at ¶ 5 (Maybelline has no ability to set retail pricing)).  In drug stores, LipColor prices varied from 12-19% on average depending on the store; Makeup prices varied from 11-16% on average.  (Ugone Report at ¶ 46).  In 2012, average grocery store prices differed by up to 35% for the LipColor and up to 35% for the Makeup.  (*Id.*).  And as of November 15, 2013, the highest and lowest online prices differed by 48% for the LipColor and 33% for the Makeup.  (*Id.*).

Purchase prices paid by consumers also varied based on geographic location.  Even within California, the difference in average prices varied by up to 6% for the LipColor and up to 9% for the Makeup depending on where in California consumers purchased the Products.  (*Id.* at ¶ 48).

Finally, the prices paid by purchasers for the Products differed widely from consumer to consumer based upon the promotional activities of the various retailers.  These included discounts and promotions such as sales, coupons, and shopper cards both across and within sales channels.  (*Id.* at ¶ 49).  For example, average promoted LipColor prices were up to 14% lower than non-promoted prices at Wal-Mart in 2012, while average promoted Makeup prices were 6% lower than non-promoted prices in grocery stores.  (*Id.* at Tables 9-10).  Similar variation existed within sales channels; for example, average promoted LipColor prices were up to 13% lower than non-promoted prices at Kmart stores in 2012, while average promoted Makeup prices were up to 5% lower than non-promoted prices at Stop & Shop.  (*Id.* at Tables 11-12).

In this case, Plaintiff's principal damages theory is the existence of a class-wide "price premium."  (Certification Memo at 6-7; Reutter Tr. 92:15-21).  In order to

calculate any alleged class-wide premium paid by putative class members, Plaintiffs would first have to identify a class-wide price paid by purchasers for the Products – but the wide variety of prices paid by individual buyers makes it impossible to establish a class-wide purchase price. (Ugone Report at ¶ 60). And in order to ascertain the amount – or even existence – of such a price premium, Plaintiffs would also have to calculate a class-wide price paid by purchasers for a product equivalent in all respects except without a 24-hour duration claim (should one be identified). However, the price variability among competitive products makes that impossible as well. (*Id.* at ¶¶ 53-55). Plaintiffs therefore cannot demonstrate a class-wide price premium with any measure of reliability. (*Id.* at ¶ 60).

This type and level of price variability would prelude Plaintiffs from meeting their burden of offering evidence sufficient to demonstrate such a premium "with a degree of certainty." *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742 (DLC), 2011 U.S. Dist. LEXIS 6094, at *9-13 (S.D.N.Y. Jan. 21, 2011). Similarly, in *Red v. Kraft Foods, Inc.*, the court found price variability an impediment to calculating any class-wide price premium. No. CV 10-1028-GW (AGRx), 2012 U.S. Dist. LEXIS 186948, at *39-40 (C.D. Cal. Apr. 12, 2012) (price differences at "vast array" of retail establishments selling products precluded any finding of price premium). The significant pricing variation evidenced in this case – both for the SuperStay Products and their potential comparators – makes it impossible to prove price-based damages, such as a price premium, on a class-wide basis. *Comcast*, 133 S. Ct. at 1433.

### 2. Individualized Consumer Expectations and Benefits Preclude Class-wide Damage Calculation

From an economic perspective, those individuals who purchased the SuperStay Products for reasons other than the Challenged Claims, and who would have done so at the same price in the absence of those claims, were not injured. (Ugone Report ¶ 25). Such purchasers received the benefit of their bargain and suffered no injury as a

result of the Challenged Claims. (*Id*.). Relying in part on the economic implications of Dr. Seggev's survey data, which indicated that only a tiny minority of purchasers bought the Products expecting them to last 24 hours, Dr. Ugone concludes that "[b]ecause many purchasers of the SuperStay 24 Products made purchases for reasons other than the Challenged Claims, it would be necessary to examine why each putative Class member purchased the SuperStay 24 Product(s) in order to evaluate alleged injury, if any." (*Id.* at Table 1, ¶ 30).

Apart from the individualized question of whether purchasers bought the Products expecting 24-hour duration, Dr. Ugone also concludes that the degree of potential injury will require evaluation on an individualized basis. This is because many purchasers will have received some duration benefit, but the amount of that benefit likely varied from consumer to consumer. (Ugone Report ¶¶ 31-32). Different duration experiences among purchasers (*e.g.*, one purchaser experiences 5 hours of duration based on her application and usage patterns, while another experiences 10 hours) will interact with different duration expectations (*e.g.*, one purchaser expected 10 hours of duration while another expected no particular number of hours) to deliver different benefits of the bargain to individual purchasers. (*Id.* at ¶ 32). Dr. Ugone opines that any determination of damages that does not consider the benefits derived by each purchaser from the SuperStay Products would result in a windfall gain to those purchasers who suffered no injury, and would uniformly compensate purchasers who suffered different degrees of harm. (*Id.*).

Dr. Ugone's report also concludes that the frequency of repeat purchaser behavior among putative class members (as identified in the Seggev survey and the Early Trier Study) indicates that those buyers were satisfied with their prior purchases of the Products. His report identifies the key factor that differentiates the Challenged Claims from labeling claims in other cases: "duration is an immediately identifiable attribute of the SuperStay 24 Products by the user." (Ugone Report ¶ 34). Repeat

purchasing "reveal[s] satisfaction with the perceived benefits of the product relative to the price paid" for both the first and subsequent purchases, indicating that the value received was "equal to or greater than what was paid." (*Id.* at ¶ 36). As an economic matter, repeat purchasers, who comprise a significant portion of the class, are uninjured in the context of the Products and claims at issue in this case. (*Id.*).

Class certification is inappropriate where, as here, "the question of [who] among the hundreds of thousands of proposed class members are even entitled to restitution would require individual inquiries." *In re Google*, 2012 U.S. Dist. LEXIS 1216 at *44-45. Because determining both the existence and amount of purchasers' injuries will require individualized inquiry into their expectations, the benefits of their bargains, and purchase satisfaction, the economic injury alleged by Plaintiffs is not amenable to class-wide proof. (Ugone Report ¶ 63).

### 3. Plaintiffs' Rebuttal Expert Neither Meets Plaintiffs' Burden nor Rebuts Dr. Ugone's Data and Conclusions

Plaintiffs have retained a "rebuttal expert," Dr. Keith Reutter, who purports to criticize parts of Dr. Ugone's analysis. As a threshold matter, however, Dr. Reutter's rebuttal is insufficient to satisfy Plaintiffs' burden under *Comcast*.

First, Dr. Reutter fails to offer a scientific model with which to measure damages on a class-wide basis. Instead, Dr. Reutter refers to two "general methods" by which to "estimate" damages. (Ugone Supplement ¶¶ 17-33). His first proposal is a "retail price method," which Dr. Reutter claims would estimate the difference between the retail prices of the SuperStay Products and unidentified "similar" competitive products. (*Id*. at ¶¶ 17, 20). Dr. Reutter's second proposal is a "wholesale price method," which he claims would make the same comparison, but would use wholesale rather than retail prices. (*Id.*).

Dr. Reutter's "retail method" follows no model, includes no details, and ignores the substantial variability in retail prices among both the SuperStay Products and

competing products. (Ugone Report ¶¶ 37-60; Ugone Supplement ¶¶ 17-24). Indeed, Dr. Reutter has never in his career submitted an expert report in any case in which he purported to calculate class-wide damages based on a price premium methodology. (Reutter Tr. 66:6-10). Dr. Reutter also does not undertake to identify a valid comparator product, and assumes (based on no data or analysis whatsoever) that any such comparator product would necessarily be less expensive than the SuperStay Products. (Ugone Supplement at ¶¶ 22, 24).[15] Dr. Reutter has since admitted that if the appropriate comparator product was either equally priced or more expensive, then SuperStay purchasers could not have been injured. (Reutter Tr. 164:22-165:3, 165:19-21). And as Dr. Ugone demonstrated, the SuperStay Products are priced at or below a number of potential comparator products. (Ugone Report ¶ 54-55, 57; Ugone Supplement ¶ 24). Finally, Dr. Reutter fails to explain how he will eliminate all other pricing variables in order to isolate any price effect of the Challenged Claims. (Ugone Supplement ¶ 24; Reutter Tr. 159-164). Indeed, Dr. Reutter testified that unless he can find an identical product in all characteristics other than the Challenged Claims, he cannot "tease out" what portion of any premium is due to the Challenged Claims – and he does not know if such a comparator product exists. (Reutter Tr. 161:8-13, 163:9-23).[16]

Dr. Reutter's "wholesale method" ignores these same methodological requirements, as well as the additional fact that wholesale prices may have no relation,

---

[15] The failure to identify a comparable product that every class member would have purchased in lieu of the product in suit has been found fatal to class-wide restitution claims. *Vioxx*, 180 Cal. App. 4th at 136.

[16] Plaintiffs mention a single potential comparator product, "SuperStay 14HR Lipstick." (Certification Memo at 6 n.7). However, the 14HR Lipstick is a one-step product with no separate conditioning balm and with a different physical design, application method, color selection and ingredient profile than the LipColor. *Compare* http://www.maybelline.com/Products/Lip-Makeup/Lip-Color/superstay-14hr-lipstick.aspx *to* http://www.maybelline.com/Products/Lip-Makeup/Lip-Color/superstay-24-color.aspx.

and specifically no linear relation, to retail prices paid by purchasers. He also admits that his wholesale method would require him to obtain confidential information from Maybelline's competitors regarding their wholesale prices and cost structure (something he has never done), and that such information is "typically not going to be available." (Reutter Tr. 126:21-130:22; *see also* Ugone Supplement ¶ 19).

Both of Dr. Reutter's analytical proposals fail to meet even the threshold requirements of a viable scientific method. (Ugone Supplement ¶¶ 16-33). Dr. Ugone points out, and Dr. Reutter concedes, that Dr. Reutter has not attempted to construct an econometric model, and has performed no analysis to establish whether his proposed methods would produce reliable results. (Ugone Supplement ¶ 21; Reutter Tr. 55:14-21; 65:17-23). Moreover, Dr. Reutter simply disregards evidence that is inconsistent with his proposed methods, including Dr. Seggev's and Dr. Ugone's evidence regarding consumers' varying reasons for purchase, varying purchase expectations, the varying materiality of the Challenged Claims, and the varying prices paid by proposed class members. And worst of all from the perspective of scientific validity, Dr. Reutter assumes the conclusions he wishes to reach – *i.e.*, that a price premium exists, that it must be due to the Challenged Claims, and that it is invariant for all competing products and for all purchasers. (Ugone Supplement at ¶¶ 16, 25, 28-30). To comply with *Comcast*, "[i]t is not enough to submit a questionable model whose unsubstantiated claims cannot be refuted through *a priori* analysis." *In re Rail Freight Surcharge Antitrust Litig.*, 725 F.3d at 254.

### C. Maybelline's Refund Program is a Superior Method of Resolution

The superiority inquiry under Rule 23(b)(3) "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). "If a class action is merely 'just as good as' an alternative method of handling the controversy, certification is improper." *Smith v. Microsoft Corp.*, No. 11-CV-1958 JLS (BGS),

2014 U.S. Dist. LEXIS 12799, at *8 (S.D. Cal. Jan. 28, 2014) (citation omitted).

Plaintiffs assert that a class action is superior "to all other available means" for resolving this controversy. (Second Amended Complaint ("SAC") ¶ 33). However, despite the evidence in this case, the only alternative Plaintiffs discuss is "individualized litigation." (*Id.*). Plaintiffs ignore the fact that Maybelline already offers a superior method for resolving any controversies relating to the Plaintiffs' claims by providing refunds to purchasers who are dissatisfied with its products.

As detailed in Maybelline's Customer Care database, the contents of which were produced to Plaintiffs at their request and on which Plaintiffs attempt to rely (Certification Memo at 6), Maybelline is regularly contacted by customers to discuss questions or issues about its products. Between the Products' launch dates and mid-2013, approximately 2,700 consumers contacted Maybelline regarding the LipColor and approximately 700 contacted it regarding the Makeup. (DeVincenzo Decl. ¶ 3; Exh. A). Relatively few of these contacts involved complaints related to product performance; there were 604 performance complaints about the LipColor and 97 about the Makeup. (*Id.* at ¶¶ 10, 11(i); Exh. A). These complaints represent only a tiny fraction of the hundreds of thousands of purchasers of the SuperStay Products,[17] further confirming that most potential class members were satisfied purchasers.[18]

Customers with complaints (performance or otherwise) are offered compensation by Maybelline. Through April of 2013, Maybelline's median compensation to dissatisfied LipColor purchasers was $10, and its median

---

[17] LipColor sales in California through September of 2013 totaled ▮▮▮▮▮▮▮, and Makeup sales in California totaled ▮▮▮▮▮▮. (Goldstein Decl. ¶ 3, Exh. A3). Performance complaints nationwide for both SuperStay Products totaled 701, and included complaints nationwide. (DeVincenzo Decl. ¶¶ 3, 9-10; Exh. A).

[18] This is consistent with the Early Trier Study's finding that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Early Trier at MAYB_ALG_010061).

compensation to Makeup purchasers was $11.[19]  (DeVincenzo Declaration ¶ 7, 8, 10, 11(e)-(h); Exh. A).  Both amounts are substantially higher than the alleged "$1.00-$1.50" and "$1.00-$3.00" premiums that Plaintiffs seek to recover in their action. (Certification Memo at 6-7).

When defendants already offer the "very relief that Plaintiffs seek," courts have found that class actions are not superior methods of adjudicating claims.  *Webb*, 272 F.R.D. at 504-05 (finding class action not superior because defendant offered refunds and noting that a small total number of complaints "most likely indicates that the majority of consumers are satisfied" with their purchases); *see also Turcios*, 2014 U.S. Dist. LEXIS 12938 at *26-28 (noting that superiority is not met when refund offered by defendant makes class members whole).  For even the small fraction of California purchasers who could conceivably have been injured as a result of the Challenged Claims, Maybelline's refund program is superior to the overbroad, unascertainable, expensive and unworkable class action proposed by Plaintiffs.

## IV.    The Proposed Class Fails to Meet the Requirements of Rule 23(b)(2)

Plaintiffs argue that a Rule 23(b)(2) class would be appropriate in this case because Maybelline's actions have "general applicability to all members of the Class" and the individual damages requested are "incidental" to the injunctive relief. (Certification Memo at 15).  But 23(b)(2) does not apply simply because a request for injunctive relief is attached to monetary claims.  *Dukes,* 131 S. Ct. at 2559.  Instead, 23(b)(2) applies only when the proposed injunction would "provide relief to each member of the class," and does not apply when each class member would be entitled to an individualized award of monetary damages.  *Id.* at 2557.  Moreover, a demand

---

[19] The fact that Maybelline has already provided refunds to some purchasers also renders Plaintiffs' proposed class overbroad because it contains plaintiffs whose injury, if any, has already been remedied.  *See Turcios v. Carma Labs., Inc.*, No. CV 12-8487-JGB, 2014 U.S. Dist. LEXIS 12938, at *14-15 (C.D. Cal. Jan. 7, 2014); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010).

for substantial monetary damages "cast[s] doubt on the propriety of certifying a class under Rule 23(b)(2)." *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 560 (C.D. Cal. 2013). As a result of the foregoing, damages claims can only be certified under Rule 23(b)(2) if the monetary relief is "merely incidental" to the claim for an injunction. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001). In this case, Plaintiffs' claims cannot be certified under 23(b)(2) because an injunction will not benefit the entire class, because the monetary relief demanded is not incidental, and because each class member would be entitled to individualized monetary damages.

First, the injunctive relief requested by plaintiffs will not provide relief to "each member of the class" as required by *Dukes*. 131 S. Ct. at 2557. On behalf of a class of all past purchasers, Plaintiffs seek an order "enjoining Maybelline from continuing the unlawful practices" about which they complain. (Certification Memo at 3; SAC, Prayer For Relief). If a past purchaser was dissatisfied with the Products because they failed to meet her duration expectations, then enjoining the duration claims will not benefit her. If a past purchaser was satisfied with the Products, whether or not she intends to purchase them again, injunctive relief will have no impact on her. In either circumstance, because the injunctive relief would not provide relief to class members, certification of a 23(b)(2) class would be improper.[20] In this case, the only possible beneficiaries of the proposed injunctive relief are future purchasers of the SuperStay Products who have never purchased them before – none of whom is a member of the putative class. *See Drimmer v. WD-40 Co.*, Case No. 06-CV-900 W (AJB), 2007 U.S.

---

[20] *See, e.g., Dukes*, 131 S. Ct. at 2560 (former Wal-Mart employees would not benefit from injunctive relief); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 729 (9th Cir. 2007) (denying 23(b)(2) certification for UCL and CLRA claims of deceptive billing practices); *Cholakyan*, 281 F.R.D. at 559 (former vehicle owners would not benefit from an injunction); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 626-27 (S.D. Cal. 2007) (denying 23(b)(2) certification for UCL and CLRA claims that hair products were falsely represented as effective in strengthening hair).

Dist. LEXIS 62582, at *14 (S.D. Cal. Aug. 24, 2007) (injunction prohibiting allegedly false statements would only benefit future purchasers).

Second, the monetary relief Plaintiffs seek is far from incidental. *See Moheb*, 2012 U.S. Dist. LEXIS 167330, at *19 (plaintiff seeking "millions of dollars in damages" highlights that monetary relief is primary concern).[21] Plaintiffs seek restitution and disgorgement of profits, statutory damages, punitive damages and attorneys' fees and costs allegedly totaling over $5 million. (SAC ¶ 9, Prayer for Relief). And when, as here, "[t]he equitable relief requested is to prevent further actions by the Defendant[] that would create further similar monetary damages… class certification under Fed. R. Civ. P. 23(b)(2) [is] inappropriate." *Util. Consumers' Action Network v. Sprint Solutions, Inc.*, 259 F.R.D. 484, 489 (S.D. Cal. 2009). Finally, as the Ninth Circuit has noted, *Dukes* "called into doubt" whether even "incidental" monetary relief can be properly requested by a 23(b)(2) class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011).

Third, Plaintiffs cannot base class certification on a claim for injunctive relief when the relief they seek would require individualized remedy determinations. *See Dukes*, 131 S. Ct. at 2557 (claims for individualized relief do not satisfy 23(b)(2)); *Cholakyan*, 281 F.R.D. at 560 (23(b)(2) does not authorize certification when class members would be entitled to individualized damages). Here, at a minimum, each injured class member's purported damages will depend on how much she paid for

---

[21] While Plaintiffs cite *Ries v. Ariz. Beverages USA, LLC,* 287 F.R.D. 523, 540-42 (N.D. Cal. 2012), that court refused to include any damage components in the 23(b)(2) class it certified, stating that large aggregate claims are not incidental to injunctive relief and that (as in this case) damages dependent on how many products a consumer purchased are inherently individualized. Similarly, while Plaintiffs cite *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, No. C 10-02124 SI, 2011 U.S. Dist. LEXIS 146139, at *22-28 (N.D. Cal. Dec. 20, 2011), that court refused to decertify a 23(b)(2) class because damages were formulaic and could be calculated solely from the defendant's records – unlike the damages claimed in this case.

each product, how many products she purchased, what competitive product she would have purchased instead, and how much that product would have cost her at the same store on the same date.  Of course, whether class members were injured at all will also depend on each purchaser's expectations of the Product's performance at the time of purchase, how the Product performed for each purchaser, and each purchaser's satisfaction with the Product's performance.  When individualized facts will be required to determine damages, courts reject Rule 23(b)(2) classes.[22]  The Court should reject Plaintiffs' efforts to shoehorn their damages claims into the limited framework of Rule 23(b)(2).

## Conclusion

For the foregoing reasons, Maybelline respectfully requests that the Court deny Plaintiffs' motion for class certification.

Dated:  March 7, 2014                    Respectfully submitted,

                                         PATTERSON BELKNAP WEBB & TYLER LLP

                                         By: */s/ Frederick B. Warder III*
                                              Frederick B. Warder III

                                         1133 Avenue of the Americas
                                         New York, New York  10036
                                         (212) 336-2121

---

[22] *See, e.g., Lozano*, 504 F.3d at 718 (rejecting Rule 23(b)(2) class in suit involving billing practices for phone services); *Campion*, 272 F.R.D. at 539 (rejecting 23(b)(2) class under UCL and CLRA for fraudulently inducing purchase of home warranty policies); *Gonzalez*, 247 F.R.D. at 626-27 (S.D. Cal. 2007) (refusing 23(b)(2) certification on UCL, CLRA, and breach of express warranty claims).

GORDON & REES LLP
Miles D. Scully (SBN 135853)
Allison F. Borts (SBN 197895)
101 W. Broadway, Suite 2000
San Diego, CA 92101
(619) 696-6700

*Attorneys for Defendant*
MAYBELLINE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list.

Dated:        March 7, 2014

*/s/ Frederick B. Warder III*
Frederick B. Warder III