PATTERSON BELKNAP WEBB & TYLER LLP
FREDERICK WARDER (*Admitted Pro Hac Vice*)
1133 Avenue of the Americas
New York, New York 10036
fwarder@pbwt.com
jkipnees@pbwt.com
Telephone: (212) 336-2000

GORDON & REES LLP
MILES D. SCULLY (SBN 135853)
ALLISON F. BORTS (SBN 197895)
101 W. Broadway, Suite 2000
San Diego, CA 92101
mscully@gordonrees.com
aborts@gordonrees.com
Telephone: (619) 696-6700

Attorneys for Defendant
MAYBELLINE LLC

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANIRA ALGARIN and PATSY MURDOCK, On Behalf of Themselves and All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>MAYBELLINE, LLC, a New York Limited Liability Company, d/b/a MAYBELLINE NEW YORK<br><br>Defendants. | Case No. 12CV3000 AJB DHB<br><br>**DECLARATION OF DR. KEITH R. UGONE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Courtroom: 2A<br>Judge: Hon. Anthony J. Battaglia<br>Magistrate Judge: Hon. David H. Bartick |

I, KEITH R. UGONE, declare as follows:

1. I am an economist and Managing Principal at Analysis Group, a consulting firm that specializes in providing economic, financial, and business strategy consulting to its clients. I received my B.A. in Economics from the University of Notre Dame in 1977, my M.A. in Economics from the University of Southern California in 1979, and my Ph.D. in Economics from Arizona State University in 1983. Throughout my career, I have provided economic, financial, and/or damages-related consulting services in class certification matters, antitrust cases, breach of contract cases, intellectual property cases, fraud-related cases, business tort cases, business interruption cases, and securities-related cases, among others. I have worked on engagements (or submitted reports) relating to class certification issues numerous times, including but not limited to matters relating to beverages (alcoholic and non-alcoholic), fast food, non-stick cooking sprays, gas mileage, hand soap, facial cream, and probiotics, among others. A copy of my curriculum vitae is attached as **Exhibit A**. I am fully familiar with the facts set forth below.

2. I have been engaged as an expert witness by defendant Maybelline LLC ("Maybelline") in this case. I submit this declaration in opposition to Plaintiffs' Motion for Class Certification.

3. I submitted an expert report in this case dated December 9, 2013, which is attached to this Declaration as **Exhibit B**. That report details my evaluation from an economic perspective whether standard economic analysis can be used to determine on a Class-wide basis whether members of the putative Class suffered economic injury and, if so, whether the extent of that injury can be determined on a Class-wide basis using common proof.

6713599

4. I concluded that proof of alleged injury, if any, would depend upon individualized inquiry into each class member's reasons for purchase and the benefits derived from use of SuperStay 24 2-Step Color (the "Lipcolor") and SuperStay 24HR Makeup (the "Makeup," and collectively with the Lipcolor, the "Superstay Products"). (Exhibit B ¶¶ 24-25). For example, consumers who chose to purchase the SuperStay Products based upon considerations unrelated to the Challenged Claims (*e.g.*, shades/colors available, prior experience with the brand, and price (including coupons and promotional pricing)) (a) did not suffer harm because of the Challenged Claims and (b) received the value that was paid for the SuperStay Products. (*Id.* at ¶¶ 26-32). Similarly, for products and claims like those at issue in this case, repeat purchasers (who comprise a substantial portion of the customer base) manifest their satisfaction with their initial purchases – including with regard to their respective duration experiences – though repeat purchasing activity. (*Id.* at ¶¶ 33-36).

5. In addition, my analysis of retail sales and pricing data collected by IRI, a market-research firm, revealed that during the alleged class period, there were wide variations in the retail prices associated with the SuperStay Products, including price differences depending on sales distribution channel (*i.e.*, the type of store in which the purchase was made), the particular retailer within a given sales distribution channel, the geographic market within a given state (such as California) in which the purchase was made, and the type of promotions offered and/or used when the purchase was made. (*Id.* at ¶¶ 37-52). Those same factors would lead to variation in the prices of any competing products that Plaintiffs may claim they would have purchased in the alternative, thereby confounding any attempt to calculate a price premium between the SuperStay Products and potential alternative products. (*Id.* at ¶¶ 53-57). The variability in (a) prices of the SuperStay Products, (b) prices of potential alternative products, and (c) any resulting premium between those prices makes it impossible to

-3-

use common proof to determine on a Class-wide basis whether putative Class members were injured, and if so, by what amount. (*Id.* at ¶ 60).

6. Furthermore, a price-premium methodology for calculating damages would fail to the extent that (a) the alternative products selected for purposes of calculating a price premium are priced at a level higher than or equal to the prices of the SuperStay Products, (b) Plaintiffs fail to demonstrate that the only reason consumers would pay the alleged premium price of SuperStay Products is due to the Challenged Claims, and/or (c) putative Class members do not have proofs of purchase relating to their purchases of the SuperStay Products. (*Id.* at ¶¶ 54-55, 58, 61-63).

7. In response to Dr. Keith Reutter's criticisms regarding my initial expert report, I submitted a supplemental expert report in this case dated January 31, 2014, which is attached to this Declaration as **Exhibit C**.

8. In my supplemental report, I further explained the obstacles precluding the use of a price-premium methodology to calculate Class-wide damages using common proof. (Exhibit C ¶¶ 7-15). I explained that Dr. Reutter's proposed, hypothetical method for using a price-premium methodology to estimate class-wide damages cannot work in practice due to, among other deficiencies, (a) Dr. Reutter's failure to identify any comparator products for a damages analysis, much less suitable comparator products that are identical to the SuperStay Products on all relevant dimensions other than the Challenged Claims; (b) Dr. Reutter's faulty assumption that the totality of any alleged price premium is solely attributable to the Challenged Claims as opposed to any other difference in attributes (*e.g.*, color, brand, packaging, means of application); (c) Dr. Reutter's unsubstantiated and highly implausible assumption that the difference in prices between the SuperStay Products and competing products will remain uniform (and not vary) within numerous local markets over time; and (d) Dr. Reutter's failure to consider that putative Class

-4-

Case No. 12CV3000 AJB DHB
Declaration IOT
Motion for Class Certification

6713599

members may have received the value that they paid for due to a preference unrelated to the Challenged Claims. (*Id.* at ¶¶ 17-33).

9. My expert report and supplemental expert report accurately represented my analysis, opinions and conclusions when they were signed on December 9, 2013 and January 31, 2014, respectively, and they accurately represent my analysis, opinions and conclusions today.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 5, 2014 in Dallas, TX                          .

*/s/ Keith R. Ugone*
_____
KEITH R. UGONE, PH.D.

6713599