1  BONNETT, FAIRBOURN, FRIEDMAN
        & BALINT, P.C.
2  ELAINE A. RYAN (*Admitted Pro Hac Vice*)
   VAN BUNCH (*Admitted Pro Hac Vice*)
3  PATRICIA N. SYVERSON (203111)
   LINDSEY M. GOMEZ-GRAY (*Admitted Pro Hac Vice*)
4  2325 E. Camelback Road, Suite 300
   Phoenix, AZ 85016
5  eryan@bffb.com
   vbunch@bffb.com
6  psyverson@bffb.com
   lgomez-gray@bffb.com
7  Telephone: (602) 274-1100

8  STEWART M. WELTMAN LLC
   STEWART M. WELTMAN (*Admitted Pro Hac Vice*)
9  43 W. Jackson, Suite 364
   Chicago, Illinois 60604
10 sweltman@weltmanlawfirm.com
   Telephone: 312-588-5033
11 (Of Counsel Levin, Fishbein, Sedran & Berman)

12 SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
   ROSE F. LUZON (SBN 221544)
13 401 West 'A' Street, Suite 2350
   San Diego, CA 92101
14 rluzon@sfmslaw.com
   Telephone: 619-235-2416

15
   Attorneys for Plaintiffs
16
   (Additional Counsel on Signature Page)
17
                 UNITED STATES DISTRICT COURT
18
                 SOUTHERN DISTRICT OF CALIFORNIA
19

20 YANIRA ALGARIN and PATSY        )   CASE NO. 12CV3000 AJB DHB
   MURDOCK, On Behalf of           )
21 Themselves and All Others Similarly )   **PLAINTIFFS' REPLY IN**
22 Situated,                        )   **SUPPORT OF MOTION FOR**
                                    )   **CLASS CERTIFICATION**
                                    )
23        Plaintiffs,               )
                                    )
24 v.                               )
                                    )   Courtroom: 2A
25 MAYBELLINE, LLC, A New York      )   Judge: Hon. Anthony J. Battaglia
26 Limited Liability Company, d/b/a )   Magistrate Judge: Hon. David
                                    )   H. Bartick
27 MAYBELLINE NEW YORK,             )
          Defendant.                )
28

# I.    INTRODUCTION

Three undisputed common facts make this case ideal for class certification: (1) Plaintiffs and all California class members necessarily saw the 24HR/no transfer representation as it was on every SuperStay 24HR Product sold during the Class period; (2) whether the representation is true or false will be proven by evidence common to the Class; and (3) if the representation is false, Class members were damaged by the price premium they paid.   None of Maybelline's arguments change the fact that this action is best adjudicated on a classwide basis.[1]

# II.    MAYBELLINE RELIES ON FLAWED SURVEY DATA

Much of Maybelline's Opposition is based on Dr. Seggev's fundamentally flawed consumer survey.  Although 251 survey participants responded that they purchased a SuperStay 24HR Lipcolor Product within the last 12 months (115 purchasing one time, 111 purchasing two or more times, and 25 people could not remember), Dr. Seggev removed anyone from the survey who purchased the lipcolor more than once and who could not remember. Seggev Report, Ex. 6 (Q.8, 13) (Dkt. #69-5).[2] Thus, any conclusions Maybelline draws regarding duration expectations of repeat purchasers are purely speculative as those individuals were never asked about their expectations.[3]

Further, Dr. Seggev's removal of repeat purchasers based on the assumption they were uninjured (Seggev Report ¶¶49, 50), is contrary to the evidence in this case, including Dr. Seggev's own admission that is possible for consumers to purchase a product multiple times and still not have their expectations met.   Seggev Depo. 113:6-14.   For example, Plaintiff Murdock purchased the SuperStay products multiple times in hopes that her subsequent

---

[1] Maybelline does not dispute that the Rule 23(a)(1)-(4) requirements are satisfied.
[2] Seggev Report ¶¶48, 61; Seggev Depo. 106:2-4 (same) (Reply Ex. A).
[3] Dr. Seggev used the same flawed process in his Maybelline 24HR SuperStay Makeup survey.  *See* Seggev Depo. 105:4-8.

purchases would live up to Maybelline's claims, not because she was satisfied with the Products. Murdock Depo. 159:19-21 (Dkt. #65-6). Dr. Seggev, however, would have excluded her – and did exclude countless others like her – from his survey on this (incorrect) assumption. Dr. Seggev also ignores that Maybelline's 24 hour/no transfer representation could have misled consumers into making their *initial* purchase even if a consumer decided to make subsequent purchases for other reasons, such as color, convenience, or brand loyalty. And, Dr. Seggev also ignores that **all** consumers were, in fact, injured as a result of paying more for the SuperStay Products than they otherwise would have because Maybelline was able to, and did, sell the Products at a premium over other comparable products without the 24 hour/no transfer representation. *See generally* Expert Rebuttal Report of Keith A. Reutter, Ph.D. ("Reutter Report), at ¶¶22-27 (Reply Ex. B).

Finally, the actual survey results are improperly skewed in favor of Maybelline. Although Dr. Seggev removed all repeat purchasers from the survey, he then reported the final results (where only, at most 115 people were surveyed) in a percentage that includes the larger original population of 251 survey participants. Seggev Report at Q.13-18.

Despite these methodological flaws, the results of Dr. Seggev's survey still illustrate that a significant portion of the potential Class members were induced to purchase by the 24 hour/no transfer benefit representation. Of the 115 one-time purchasers surveyed 61% indicated that the duration/no transfer benefit or advertising/desire to try the product induced them to purchase SuperStay 24HR Lipcolor. *Id.* at Q.13-14. And, 31 of the 76 people surveyed (41%) responded that they thought the lipcolor would last "all day," the "whole day" or "24 hours," and many others believed it would last "through the work day" and would be "long lasting." *Id.* at Q.17. Similarly, of the 124 one-time makeup purchasers, 46% indicated that the duration/no transfer benefit or

advertising/desire to try the product induced them to purchase SuperStay 24HR makeup.  And, 38 of the 74 people surveyed (51%) regarding the makeup indicated they believed the SuperStay 24HR Makeup would last "all day," "throughout the day," "the whole day" or "24 hours."  *Id.* at Q.16.

## III.   THE CLASS IS ASCERTAINABLE

The proposed class includes (1) California residents (2) who purchased the SuperStay Products (3) for personal use (4) before the date of the Class notice. Because these are objective criteria, "the members of the proposed class can be ascertained by 'tangible and practical standards for determining who is and who is not a member of the class.'"  *Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 377 (N.D. Cal. 2010); *see also McCrary v. The Elations Co*., *LLC*, No. 13-00242, Doc. #95 at 9-10 (C.D. Cal. Jan. 13, 2014) (Ex. C).

Contrary to Maybelline's arguments, a class is not unascertainable because it may include "satisfied" repeat purchasers or those who may have been motivated to purchase for reasons in addition to the 24HR/no transfer representations.  *See, e.g.*, *Cabral v. Supple, LLC*, No. 12-00085, Doc. #103 at 4-6 (C.D. Cal. Feb. 14, 2013) (Dkt. #67-16) (ascertainability not "threaten[ed]" because certain class members may have been "satisfied" as the "truth or falsity of Supple's advertising will be determined on the basis of common proof" not customer satisfaction); *Galvan v. KDI Distrib. Inc*., No. 08-0999, 2011 WL 5116585, *5 (C.D. Cal. Oct. 25, 2011) (certifying class definition that included individuals who did not perceive they were defrauded).  Further, as discussed above, the factual premise upon which Maybelline attempts to base its "uninjured purchaser" ascertainability argument as to repeat purchasers is flawed.[4]  Equally problematic is Maybelline's conclusion that certain one-time

---

[4] *Chow v. Neutrogena Corp*., No. 12-04624, 2013 U.S. Dist. LEXIS 17670, at *4-5 (C.D. Cal. Jan. 22, 2013), is inapplicable.  There, unlike here, the issue of repeat purchasers arose in the predominance context (not ascertainability), and there was no faulty survey involving repeat purchasers.

purchasers were uninjured because they had no duration expectations at the time of purchase, especially in light of Dr. Seggev's contrary admission that duration was a "primary purchase driver" for one-time purchasers and that such purchasers were "potentially injured." Seggev Report ¶¶50, 68; *see also id*. at ¶¶77, 88, 97.[5]

Further, the fact that Maybelline does not maintain records of consumer purchases and potential Class members will likely lack "documentary" proof of their purchases, does not mean a class is unascertainable.[6] As Judge Bernal found in *McCrary*, "[i]f Defendant's argument were correct, 'there would be no such thing as a consumer class action.' *Ries v. Az. Beverages USA, LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (finding ascertainability satisfied where class members were required to self-identify that they purchased iced tea with "natural" on the label during the class period)." *Id.* at 9. And, although Maybelline cites to *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), which required proof of purchase, it is currently undergoing *en banc* review and is at odds with the law of this Circuit, leading civil procedure treaties, and Rule 23 itself. *See McCrary*, at 10 ("[w]hile [*Carrera*] may now be the law in the Third

---

[5] The cases Maybelline relies on – most of which as not false advertising cases – involve unharmed individuals or do not discuss the scope of the class in the context of ascertainability. *Cf., e.g., Moheb v. Nutramax Labs., Inc.*, No. 12-3633, 2012 WL 6951904, at *3 (C.D. Cal. Sept. 4, 2012) (class unascertainable because the evidence indicated that, contrary to plaintiff's theory, the dietary supplement actually provided some of the represented joint health benefits); *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (class definition was overbroad because it included individuals who never experienced problems with their computer displays, experienced problems only post-warranty, and were not purchasers); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1017, 1023-24 (analyzing overbreadth of class in the context of classwide reliance).

[6] Ascertainability has always "focus[ed] on the question of whether *the class* can be ascertained by objective criteria" as opposed to "subjective standards (e.g., a plaintiff's state of mind)." Newberg on Class Actions §3:3 (5th Ed. 2013); Manual of Complex Litigation §21.222 (4th ed. 2004). Requiring every Class member to prove—under an evidentiary standard that forecloses even the traditional use of affidavits—that they purchased the defendant's product would essentially abrogate class certification in cases involving mass-marketed consumer products. Such an approach frustrates the "core" purpose of Rule 23 – solving "the problem that small recoveries do not provide the incentive for any individual to bring a solo action." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

1  Circuit, it is not currently the law in the Ninth Circuit.").

2         Finally, proper notice and claim administration procedures will minimize

3  any consumer confusion or hypothetical fraud.[7] *See McCrary*, at 10-11; *Galvan*,

4  2011 WL 5116585, at *4-5 (defendant cannot directly identify class members but

5  can identify retailers who sold phone cards and class notice will further help

6  reveal the members).[8]

7  **IV.    PLAINTIFFS HAVE SATISFIED PREDOMINANCE**

8         To attack Plaintiffs' predominance argument, Maybelline resorts to

9  blending the analysis of Plaintiffs' UCL and CLRA claims.  However, California

10 law requires a separate review at the class certification stage.[9]  When properly

11 considered, the requirements of both Plaintiffs' UCL and CLRA claims are

12 satisfied.  *See also* Motion at 18-21.

13         **A.    Common Issues Predominate in Plaintiffs' UCL Claim Where
                   Maybelline's 24 Hour/No Transfer Benefit Representation
14                 Deceived a Significant Portion of Class Members**

15        It is well-settled that under the UCL, there is no reliance requirement or

16 requirement to prove that any individual was actually deceived.  *Zeisel v.*

17 *Diamond Foods, Inc.*, No. 10-01192, 2011 WL 2221113, at *9 (N.D. Cal. June 7,

18 2011).  Rather, the focus of the Court's analysis is "on the defendant's conduct,

19 rather than the plaintiff's damages," and "**'it is necessary only to show that**

20 **members of the public are likely to be deceived**.'" *In re Tobacco II Cases*, 46

21 Cal. 4th 298, 312 (2009) (emphasis added); *see also Stearns*, 655 F.3d at 1020.

22 _____

23 [7] Maybelline has the names of those select individuals who received refunds, the
   amount of the refund and for what products.  Thus, during the claims process, if any
   of those individuals submit a claim form, the Claims Administrator will be able to
24 handle the claims appropriately. *See* DeVincenzo Decl., at ¶ 7 (Dkt. #69-1).
   [8] Maybelline's cases rejecting self-identification involved complicated, multi-
25 pronged unreasonable criteria to determine class membership. *Cf., e.g., Astiana v.
   Ben & Jerry's Homemade, Inc.*, No. C 10-4387, 2014 U.S. Dist. LEXIS 1640 (N.D.
26 Cal. Jan. 7, 2014) (because only 1 of 15 different suppliers provided Ben & Jerry's
   with "alkalized cocoa processed with a synthetic ingredient", it was impossible for
27 class members to determine if they had eaten the affected food product).
   [9] "A CLRA claim warrants an analysis different from a UCL claim because the
   CLRA requires each class member to have an actual injury caused by the unlawful
28 practice." *Stearns*, 655 F.3d at 1022.

Under the UCL's "likely to deceive" standard, Plaintiffs are not required to show that all class members were actually deceived by individualized proof, but rather "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

Despite Defendant's contentions otherwise, Plaintiffs have shown a "significant portion" of the target market is likely to be deceived. Each of the named Plaintiffs stated in their depositions that the main reason they purchased the Products was the 24 hour/no transfer benefit representation that was prominently featured on the bottles.[10] Defendants' own early consumer studies similarly indicated ███████████████████████████████████████████████████████████████ And, despite its flaws, Dr. Seggev's survey data shows that the duration claims were material to a significant portion of consumers. Specifically, 61% of lipcolor and 46% of makeup purchasers surveyed indicated that the duration/no transfer benefit or advertising/desire to try the product induced them to purchase SuperStay Products and over 41% of lipcolor and 51% of makeup purchases surveyed indicated they believed the Products would have long-lasting benefits. *See* Section II.[11]

**B.    Common Issues Predominate in Plaintiffs' CLRA Claim Because Maybelline Made a Material Misrepresentation to All Class Members**

Unlike the UCL, Plaintiffs' CLRA claim requires a showing of causation and reliance. However, "[c]ausation, on a classwide basis, may be established by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns*,

---

[10] Murdock Dep. at 100:13-20 (Dkt # 67-6); Algarin Dep. at 43: 9-15 (Dkt. #67-5).
[11] Maybelline points to a high repeat purchaser rate to argue that those consumers could not have been misled. This argument ignores that consumers could have been misled in their initial purchase even though they may have continued to purchase the product for other reasons.

655 F.3d 1022 (emphasis in original, quotation marks omitted). Representations that appear on labels are presumed material. *F.T.C. v. Pantron I Corp.*, 33. F.3d 1088, 1095-96 (9th Cir. 1994); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011).[12]

Maybelline attempts to downplay the materiality of its own misrepresentation by arguing that the 24 hour/no transfer benefit representations were shared by very few purchasers and that the existence of varying consumer expectations regarding the SuperStay products defeats materiality and predominance. In California, however, Plaintiffs need only show that the 24 hour/no transfer benefit representation was a "substantial factor" in motivating the purchase; it need not "be the sole or even the predominant or decisive factor influencing his conduct…" *Tobacco II*, 46 Cal. 4th at 326-27; *see also Kwikset*, 51 Cal. 4th at 327 (same). Dr. Seggev's data supports that the 24 hour/no transfer benefit representation was material and a "substantial factor" in bringing about the purchase of the Products. *See* Section II.

### C. Plaintiffs Have Demonstrated a Judicially Approved Means of Calculating Class-Wide Damages Using Common Proof

"At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." *Chavez*, 268 F.R.D. at 379 (internal quotation marks omitted). Here, Plaintiffs set forth in their Motion a premium price theory that complies with *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), as it is directly "tied" to Plaintiffs' theory of the case, *i.e.*, that Plaintiffs and Class members paid a premium based on the 24 hour/no transfer claim and, because the SuperStay 24HR Products did not provide that represented benefit, Class members were damaged in the amount of the associated premium. *Id.* at

---

[12] *See also* Motion at 3-4 (citing cases finding that certification was appropriate based on affirmative misrepresentations on the packaging of consumer products).

1433.[13]  Thus, Plaintiffs' damages theory is simple: damages are the difference between the SuperStay 24HR Products and other lipsticks, lip glosses and foundations made by Maybelline and its competitors without the 24HR/no transfer representation but that are otherwise comparable.

Supporting Plaintiffs' theory, Dr. Reutter identifies the retail price method and wholesale price comparison method that are narrowly tailored to Plaintiffs' case theory and are accepted means of calculating classwide price premium damages.  Reutter Report at ¶10.  For example, Dr. Reutter explained that he could use the retail price method to calculate the price premium by obtaining price and quantity of units sold data on both the SuperStay products and the competing products and then calculating the difference between the retail prices of the products during the Class period to yield the price premium that the 24hr/no transfer benefit commanded.  *Id.* at ¶13.  Multiplying the price premium by the total number of SuperStay products sold in California during the Class Period, renders the total economic injury to the class (all through common proof).  *Id.*  Thus, Plaintiffs have demonstrated that price premium relief is contemplated by the UCL and CLRA, is capable of being calculated on a classwide basis, and that Dr. Reutter could perform such a calculation when it becomes appropriate.

Maybelline's criticisms of Plaintiffs' proposed damages model are mostly speculative and/or have already been accounted for by Dr. Reutter.  For example, Dr. Ugone's assumption that retail price variations make classwide damages impossible is wrong.  As Dr. Reutter explained, "in evaluating Class-wide evidence for the estimation of damages, the price premium—not the absolute price of the SuperStay 24HR Products—is the relevant analysis."  Reutter Report

---

[13] Courts routinely certify class actions *post-Comcast* where damages are capable of determination on a class-wide basis and the damages are traceable to a plaintiff's "liability case."  *See, e.g., Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *Thurston v. Bear Naked, Inc.*, 3:11-CV-02890, 2013 WL 5664985, at *10 (S.D. Cal. July 30, 2013).

at ¶17.  And, even if absolute retail prices were relevant – which they are not – Dr. Ugone's analysis fails to take into account factors such as quantities and price differences to determine whether any of the "difference materially matters" and fails to consider that "fluctuations" would "keep the price difference between two products intact and thus leave similarly situated proposed Class members with equal damages."  *Id.* at ¶¶18-20.

Dr. Reutter could also account for repeat purchases by calculating damages based on initial purchases only, factoring out the number of repeat purchases using the repeat purchase rates provided in Maybelline's own documents.  *Id.* at ¶¶22-27.  And, importantly, Dr. Ugone's uninjured repeat purchaser opinions are flawed because, *inter alia*, he fails to take into account the "Consumer Surplus" theory.  *See generally Id*.

Finally, Plaintiffs and the Class were damaged by the wholesale price premium and are entitled to that amount.  Although consumers do not pay wholesale prices, this model would "provide a reasonable, although conservative, estimate of damages because it would necessarily calculate a premium base amount that every Class member paid for the Products and, thus, the minimum amount of damage they suffered."  *Id.* at ¶12.

## V.    THE CLASS MEETS THE RULE 23(b)(2) REQUIREMENTS

Plaintiffs and the Class complain of standard and uniform (as Maybelline concedes), false and fraudulent labeling and advertising of the Products that is generally applicable to the Class as a whole.  As a result, the Class will benefit, as a whole and in one stroke, from "indivisible" equitable relief in the form of an injunction barring the false and misleading advertising and labeling regarding the 24 hour claims.  There is no evidence that Plaintiffs would not buy the Products again, and Plaintiffs want to make sure that the labels and advertising are accurate so that they and other consumers in California know what they are buying and can actually expect.  *See Ries*, 287 F.R.D. at 541-42 (rejecting

1 arguments that different prices or reasons for purchase precludes certification);
2 *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 592 (C.D. Cal. 2011) (certification
3 included injunction to stop false advertising).  This is especially important here
4 where strong brand loyalty bolsters the likelihood of future injury by consumers.
5 To the extent that Plaintiffs also seek monetary relief, it is incidental to the
6 injunctive relief sought and does not require individual damages determinations.
7 *Delarosa*, 275 F.R.D. at 592-93 (actual damages under the CLRA and restitution
8 under the UCL are incidental to injunctive relief); *Tobacco II Cases*, 46 Cal.4th
9 at 324 (focus of statute is on defendant's conduct and deterrence).  Maybelline
10 has not demonstrated otherwise.

## VI. MAYBELLINE'S REFUND PROGRAM IS NOT SUPERIOR

Maybelline's company-run "refund program" is no remedy at all for Class members.  First, it not an alternative form of adjudication, which is the superiority standard.  *See, e.g.*, *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 610 (E.D. La. 2006) ("The analysis is whether the class action format is superior to other methods of adjudication, not whether a class action is superior to an out-of-court, private settlement program.").  Second, the refund policy is not on the Products' labels or its website, and Maybelline provides no information regarding how it determines who receives compensation or the standard for determining the amounts.  In fact, without a class action, most Class members who were exposed to the 24 hour/no transfer representation will never be compensated by Maybelline.[14]

## VII. CONCLUSION

Plaintiff's Motion is well taken and should be granted.

Dated:  March 28, 2014                Respectfully submitted,

BONNETT, FAIRBOURN, FRIEDMAN

---

[14] The cases Maybelline relies on are distinguishable.  *Cf., e.g.*, *Webb v. Carter's, Inc.*, 272 F.R.D. 489, 504-05 (C.D. Cal. 2011) (refund policy was communicated in a joint public statement with CPSC and on defendant's website).

& BALINT, P.C.

*/s Patricia N. Syverson*
Elaine A. Ryan (*Admitted Pro Hac Vice*)
Van Bunch (*Admitted Pro Hac Vice*)
Patricia N. Syverson (203111)
Lindsey M. Gomez-Gray (*Admitted Pro Hac Vice*)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
eryan@bffb.com
vbunch@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone: (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Manfred Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone: (619) 756-7748

STEWART M. WELTMAN LLC
Stewart M. Weltman (*Admitted Pro Hac Vice*)
43 W. Jackson, Suite 364
Chicago, Illinois 60604
sweltman@weltmanlawfirm.com
Telephone: 312-588-5033
(Of Counsel Levin, Fishbein, Sedran & Berman)

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
Rose F. Luzon (SBN 221544)
401 West 'A' Street, Suite 2350
San Diego, CA 92101
rluzon@sfmslaw.com
Telephone: 619-235-2416

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
James C. Shah
Natalie Finkelman Bennett
475 White Horse Pike
Collingswood, NJ 08107
Telephone: (856) 858-1770
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

EDGAR LAW FIRM LLC
John F. Edgar
1032 Pennsylvania Ave.
Kansas City, MO 64105

-11-

Telephone: (816) 531-0033
jfe@edgarlawfirm.com

Mark Schlachet
3515 Severn Road
Cleveland, OH 44118
Telephone: (216) 896-0714
mschlachet@gmail.com

*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I, the undersigned, declare:

That on March 28, 2014, declarant served **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** by email to:

GORDON & REES LLP
M.D. SCULLY
ALLISON F. BORTS
101 W. Broadway, Suite 2000
San Diego, CA 92101
mscully@gordonrees.com
aborts@gordonrees.com

PATTERSON BELKNAP WEBB & TYLER, L.L.P.
FREDERICK B. WARDER III
1133 Avenue of the Americas
New York, New York 10036-6710
fbwarder@pbwt.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 28, 2014, at Phoenix, Arizona.

*/s Patricia N. Syverson*
Patricia N. Syverson