1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANIRA ALGARIN, on Behalf of Herself and All Others Similarly Situated,<br><br>              Plaintiff,<br>v.<br><br>MAYBELLINE, LLC, A New York Limited Liability Company, dba MAYBELLINE NEW YORK,<br><br>              Defendants. | Civil No.12cv3000 AJB (DHB)<br><br>ORDER DENYING MOTION FOR CLASS CERTIFICATION<br><br>[Doc. Nos. 63, 67] |

This action arises out of the allegedly deceptive nature Defendant Maybelline, LLC's ("Maybelline") labels and advertises its Superstay 24HR product line.  Plaintiffs, Yanira Algarin ("Algarin") and Patsy Murdock ("Murdock") (collectively "Plaintiffs"), bring this putative class action pursuant to California's Unfair Competition Law ("UCL") and California's Legal Remedies Act "CLRA") seeking both monetary and injunctive relief. (Doc. No. 47.)  Presently before the Court is Plaintiffs' motion for class certification.  (Doc.

12cv3000

Nos. 63, 67).[1]  The Court heard oral arguments on April 23, 2014 and took the matter under submission.  For the following reasons, Plaintiffs' motion is DENIED.

I.   **BACKGROUND**

A.   **Factual Background**

Maybelline manufactures, markets, sells and distributes SuperStay 24HR Lipcolor, a line of lipcolors, and SuperStay 24HR Makeup, a line of skin foundations (collectively the "Class Products").  (Doc. No. 47 at 1.)  The Lipcolor features the label "SuperStay 24," "Micro-Flex Formula," "No Transfer," and "Up to 24HR Wear."  (Doc. No. 63, Ex. 10.) The Makeup features the Label "SuperStay Makeup 24HR," "Micro-Flex Formula," "Zero-Transfer," and "24HR Wear."  (*Id.*)  Though the class products are also advertised as makeup that provides "flexible, breathable, all day comfort," that withstands "heat, sweat and humidity," Plaintiffs take the most issue with the 24 hour/no transfer claim.

Plaintiff Algarin purchased the SuperStay Lipcolor for $10.00 in reliance on the claimed 24 hour staying power.  Plaintiff Murdock purchased the SuperStay Makeup for $12.00 also in reliance on the claimed 24 hour coverage. (Doc. No. 47 at 5.)  Both Plaintiffs gave full credence to the claimed 24 hour duration and were thus willing to pay a premium for that purported benefit.  (*Id.* at 9.)  Both Plaintiffs used the products as directed and needless to say, were decidedly unimpressed.  Plaintiffs were exasperated that the products failed to live up to the representations as "neither the lipcolor nor the foundation lasted 24 hours, or anywhere near 24 hours . . . ."  Had the two Plaintiffs known the "truth" about the "premium priced" Class Products, they would have purchased less expensive options. (*Id.*) Plaintiffs allege that Maybelline continues to deceptively convey through its advertising and labeling that: "SuperStay 24HR Products, with their 'micro-flex formula,' will not 'transfer' and will 'stay' on for '24 hours.'" (*Id.* at 8-9)  Plaintiffs were compelled to act on behalf of

---

[1] Document 63 is the sealed version of Plaintiffs' motion and document 67 is the public redacted version.  Future citations in this order in this Order will refer only to document 63.

themselves and the class to prevent Maybelline from profiting further off of this allegedly deceptive practice.

Maybelline allows dissatisfied consumers to make their complaints known to the company, and in some circumstances will issue a refund, through its Refund Program. (Doc. No. 69 at 21.)   According to counsel, a consumer may obtain more information on the Program by visiting Maybelline's online website.  From there, she may write to Maybelline and if she expresses dissatisfaction (performance or otherwise) she may receive compensation from Maybelline.  Between the Products' launch dates and mid-2013, approximately 2,700 consumers contacted Maybelline regarding the lipcolor and 700 regarding the makeup.  (Decl. of Patricia Erin DeVincenzo ("DeVincenzo Decl."), Doc. No. 69, Ex. A.) Of these communications, 604 were performance complaints about the lipcolor and 97 about the makeup.  The median compensation for the lipcolor is $10.00 and for the makeup is $11.00. (*Id.* at ¶ 7, 8, 10, 11(e)-(h).)

**B.   Procedural Background**

Plaintiff Algarin filed the instant action with this Court on December 18, 2012, suing only over the lipcolor line.  Plaintiff Murdock filed her action in the Northern District of California, suing for the makeup line.  Attorneys for both Plaintiffs sought leave to file a Second Amended Complaint ("SAC") to consolidate the two cases in this district.  The Court granted that motion and Plaintiffs filed their SAC on September 19, 2013. (Doc. No. 47.)

Plaintiffs claim the labels are deceptive, false, and/or misleading.  According to named Plaintiffs, the labels and representations featured on the Class Products leads the reasonable average consumer to believe that the product she is purchasing will *actually* remain on her face for 24 hours.[2] (Doc. No. 63 at 4-7.)  These representations are further

---

[2] Though this Order will may use gender-specific pronouns when referring to the average consumer of the Class Products, the Court is not commenting upon who may or may not be the actual purchasers.

reinforced by Maybelline's extensive advertising campaign featuring the "long-wearing" benefits of the Class Products. (*Id.* at 6.) Plaintiffs claim these representations are false, as the Class Products do not actually last for 24 hours. Maybelline, as the manufacturer, seller/distributor, knew or should have known the products do not last 24 hours and should have disclosed that information. (Doc. No. 47 at 9.) According to Plaintiffs, they, along with the purported class members were deceived and will continue to be deceived, by the alleged misrepresentations unless the Court certifies the class and allow the class to seek injunctive relief. Moreover, Plaintiffs and class members suffered harm, entitling them to damages. (Doc. No. 63 at 3.)

Because of the Class Product's deceptive labels and advertisements, Maybelline is able to charge a "hefty price premium." (*Id.* at 6.) The Lipcolor retails for approximately $10.00-$12.00, which is $1.00-$1.50 higher than other Maybelline products. The Makeup retails for approximately $11.00-$12.00, which is $1.00-$3.00 higher than other Maybelline foundations. (*Id.* at 6-7.) Plaintiffs attribute this price premium solely to the alleged misrepresentations.

Plaintiffs claim "[t]his is a textbook case for class certification" and seek certification under both Rule 23(b)(2) and Rule 23(b)(3). (Doc. Nos. 63) A hearing was held on this matter on April 24, 2014, where the Parties addressed a number of concerns and discussion points the Court had set prior. (*See* Doc. No. 74.) The Court took the matter under submission and this Order follows.

## II. LEGAL STANDARD

### A. Class Certification

Federal Rule of Civil Procedure governs class actions. The party seeking certification must provide facts sufficient to satisfy the requirements of Rule 23(a) and (b). "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of [Rule] 23." *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks and

citation omitted).  Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to maintain a class.  *Id.*  If the court finds the action meets the requirements of Rule 23(a), the court then considers whether the class is maintainable under Rule 23(b).  In the instant matter, Plaintiffs seek certification under both 23(b)(2) and 23(b)(3).

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2). Claims for monetary relief may not be certified under Rule 23(b)(2), at least where the monetary relief is not incidental to the requested injunctive or declaratory relief.  Instead, individualized monetary claims belong in Rule 23(b)(3), "with its procedural protections of predominance, superiority, mandatory notice, and the right to opt out."  *Wal-Mart Stores Inc. v. Dukes*, - U.S. -, 131 S. Ct. 2541, 2545 (2011).  Rule 23(b)(3) requires the court to find that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

The merits of class members' substantive claims are highly relevant when determining whether to certify a class.  It is not correct to say a district court may consider the merits to the extent that they overlap with certification issues; rather, "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Dukes*, 131 S. Ct. at 2553.)  Nevertheless, the district court does not conduct a mini-trial to determine if the class "could actually prevail on their claims."  *Id.*

**B.    UCL and CLRA**

"The primary purpose of the unfair competition law . . . is to protect the public from unscrupulous business practices."  *Consumers Union of U.S., Inc. v. Alto-Dena Certified Dairy*, 4 Cal. App. 4th 964, 975 (Cal. Ct. App. 1992).  A business practice need only meet

12cv3000

one of the three criteria (unlawful, unfair, or fraudulent) to violate the UCL. *McKell v. Wash. Mut. Inc.*, 142 Cal. App. 4th 1457, 1471 (Cal. Ct. App. 2006). The UCL prohibits similarly "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Advertising is broadly defined to include virtually any statements made in connection with the sale of goods or services, including statements and pictures of labels. *See e.g., Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Advertising that is likely to deceive the reasonable consumer violates the false advertising law. *Id.* at 938. "A UCL action is equitable in nature, damages cannot be recovered." *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009). Recovery is thus limited to injunctive relief and restitution. *Id.*

Likewise, a defendant is liable under the CLRA if it misrepresents that its goods possess certain characteristics, uses, or benefits that they do not have or advertises goods with the intent not to sell them as advertised. Cal. Civ. Code § 1770(a)(5), (7), (9) and (16).

## III.   DISCUSSION

Plaintiffs must provide sufficient facts to show the requirements of Rule 23(a) are satisfied and that class treatment is appropriate under Rule 23(b). Maybelline makes several objections to class certification and has provided expert testimony and unrebutted evidence in support. The Court had a number of initial reservations regarding class certification and after further consideration of the briefs filed in support and opposition, as well as oral arguments from both parties, the Court's reservations were confirmed. The Court is persuaded by Maybelline's contentions and the objective evidence before it. The Court finds certification improper given the numerous deficiencies present in this case.

## A.   The Proposed Class

Plaintiffs define the class as: "[a]ll California consumers who purchased SuperStay 24HR Lipcolor and/or SuperStay 24HR Makeup for personal use until the date notice is disseminated."

As an initial matter the Court expressed concern over this inclusive definition. Given the number of differences between the two products, including but not limited to, pricing differences, claims differences[3], labeling differences, and ultimately merits differences, the Court questioned whether creating subclasses would be appropriate. After addressing this matter during the hearing, counsel for Plaintiffs claimed that one comprehensive class is viable though they would not object to creating subclasses. Ultimately however, the Court finds that even parsing out the two subclasses would still not address all of the deficiencies precluding class certification.

## B.   The UCL's Reasonable Consumer and CLRA's Reliance and Materiality Standards

In 2004, California voters passed Proposition 64 which amended the UCL to allow private suits only by a plaintiff "who has suffered injury in fact and has lost money or property *as a result* of . . . unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added); *In re Tobacco II*, 46 Cal. 4th 298, 314 (Cal. 2009). While claims that sound in fraud would generally require Plaintiffs to prove reliance, plaintiffs pursing a UCL claim need not prove that each member of the class relied on the allegedly fraudulent misrepresentation. Instead, California law only requires plaintiffs "show that members of the public are likely to be deceived." *Tobacco II*, 46 Cal. 4th at 312. As such, Plaintiff need only show that the "reasonable consumer" is likely to have been deceived by the challenged business practices or advertising. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). The focus of the inquiry is on the "reasonable consumer who is a member of the target population. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003).

Similarly, though individualized reliance (causation) is an element of a CLRA claim, if a material misrepresentation is made to the entire class, then the Court infers a presumption of reliance as to the class, and individualized causation need not be shown. In

---

[3] The Lipcolor is labeled as lasting "up to" 24 hours, where as the Makeup is labeled as "24HR".

other words, "Plaintiffs may satisfy their burden of showing causation as to each by showing materiality as to all." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (Cal. Ct. App. 2009) (internal quotation marks and citation omitted).   A representation is considered material if it induced the consumer to alter his position to his detriment. *Id.*   However, "if the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." *Id.*

Of great importance to the matters in this class certification is the fact Maybelline has introduced unrefuted evidence of who the reasonable consumer in the target audience is and what drives her in making purchasing decisions.   As Maybelline contends, the Court does not need to look to the hypothetical reasonable consumer.   Similarly, the Court does not need to infer reliance given the evidence presented.

## C.   Maybelline's Expert Report

Maybelline's expert, Dr. Eli Seggev, is an expert in the field of marketing.[4]   After a thorough review of the Seggev report, the Court finds him qualified, and his opinion to be based on reliable methodologies, relevant to the issues at hand, and useful to the trier of fact. (Expert Report of Eli Seggev ("Seggev Rep."), Doc. No. 69-5, Ex. B.)   Plaintiffs' only complaint with Dr. Seggev's survey was that he removed repeat purchasers and those who could not remember how many times they purchased the Class Products.   The Court has reviewed Dr. Seggev's reasoning for this, and finds that the decision was purposeful and reasoned.   (Seggev Rep. ¶ 49.)

Dr. Seggev reports that repeat purchasing is a behavioral indicator of customer satisfaction and it follows that repeat purchasers are fully informed as to the duration claims and realities when they decided to purchase the Class Products again. (Seggev Rep. ¶ 49 (citing Szymanski, D.M. & Henard, D.H., *Customer Satisfaction: A Meta-Analysis of the*

---

[4] Plaintiffs do not challenge Dr. Seggev's expert report under Rule 702 and/or *Daubert*.

*Empirical Evidence*, 29 J. Acad. Mktg. Sci. 16, 24-25, 28-29 (2001)).   Indeed, with cosmetics such as the ones at issue here, customers can readily discern how well they work and whether they lived up to the claimed representations.   Accordingly, repeat purchasers can not be considered injured in the manner proposed by Plaintiffs. (Seggev Rep. ¶ 49.) As to the SuperStay lipcolor, Dr. Seggev's Report indicates that: (1) 45% of purchasers were satisfied with the product based on repeat purchases; (2) duration was not the only motivating factor in making the purchases; (3) over half of purchasers could not recall duration expectations or were satisfied with the duration of the product; (4) 4% of the total sample expected the specific 24 hour duration showing duration expectations varied among purchasers; and (5) only 9% of the total sample were one-time purchasers who expected the product to last 24 hours and thus are "injured" in the manner alleged by Plaintiffs.  (*Id.* ¶¶ 76-82).

As to the SuperStay Makeup, Dr. Seggev's survey indicates that: (1) 32% of purchasers were satisfied with the product and not misled by the duration and/or could not have suffered the injury as alleged by Plaintiffs; (2) purchasers indicated a variety of reasons in selecting the product for purchase; (3) 4% of the total sample mentioned the 24 hour duration as a reason for purchase showing that the 24 hour duration expectation was not the primary purchaser driver; (4) over half of purchasers were satisfied with the duration or had no duration expectation showing that duration expectations were either met or not material; and (5) only 14% of the total sample are one-time purchasers who expected the product to last 24 hours or more and thus are "injured" in the manner alleged by Plaintiffs. (*Id.* at ¶¶ 96-102.)

Plaintiffs cite this Court to deposition testimony by Dr. Seggev to stand for the proposition customers may purchase a product several times and not have their expectations met. (Doc. No. 70 at 1.)  However, further review of the entirety of Dr. Seggev's testimony reveals that Plaintiffs take his testimony out of context.  (Doc. No. 76.)  Dr. Seggev steadfastly defends his position that 54% of repeat purchasers, through the behavior of

purchasing again, are not injured in the manner Plaintiffs allege.  Indeed, it sounds in common sense that making repeat purchases indicates that the customer's expectations have been met and she was satisfied with the product.  *See Chow v. Neutrogena Corp.*, 2013 WL 5629777, at *2 (C.D. Cal. Jan 22, 2013) (finding plaintiff's CLRA claim problematic where evidence demonstrates a significant portion of consumers were repeat purchasers and thus inferring class-wide reliance was inappropriate).

Dr. Seggev's findings inform a number of the Rule 23 factor analysis.  The Court will address them in turn.

**D.  Ascertainable Class**

Though not explicitly stated in Rule 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.  *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (quoting *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999)); *Bishop v. Saab Auto. A.B.*, 1996 WL 33150020, at *4 (C.D. Cal. Feb. 16, 1996) (citing *DeBremaecker v. Short*, 433 F.2d 744 (5th Cir. 1970)).   A class is sufficiently defined and ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member."  *O'Connor v. Boeing N. American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998); *accord Davoll v. Webb*, 160 F.R.D. 142, 143 (D. Colo. 1995); *see also Buford v. H&R Block*, Inc., 168 F.R.D. 340, 347 (S.D. Ga. 1996) ("[T]he 'description of the class must be sufficiently definite to enable the court to determine if a particular individual is a member of the proposed class,'" quoting *Pottinger v. Miami*, 720 F. Supp. 955, 957 (S.D. Fla. 1989)).   It must be administratively feasible to determine whether a particular person is a class member as "an identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on a prospective member's state of mind."  *Schwartz*, 183 F.R.D. at 679-80.

12cv3000

Maybelline argues the proposed class fails to meet the ascertainability requirement based on two grounds.  First, the proposed class is overly broad as it includes uninjured purchasers.  Second, membership of the class cannot be readily determined.

Maybelline's first argument is essentially a challenge on the proposed class members' standing.  Maybelline presents evidence, in the form of Dr. Seggev's survey and report as well as Maybelline's Early Trier Study, to show the proposed class includes: (1) a large percentage of the potential class of SuperStay purchasers are repeat purchasers who cannot be considered to be misled by the duration representation identified by Plaintiffs and (2) one-time purchases of the Class Products who had no duration expectations and whose purchasing decisions were made without regard to product duration.  (Seggev Rep. ¶¶ 63-102.)  Because the proposed class includes these "uninjured" purchasers, the class is impermissibly overbroad and thus unascertainable.

As to these arguments regarding the inability of proposed members to show injury, the Court finds them more suitable for analysis under the Rule 23 rubric given the facts of this case.[5]  Though it may be true that many purchasers of the Class Products did not rely on the duration claims or were satisfied with the products, and thus "uninjured," these issues would not affect the Court's analysis of *ascertainability* based on the facts in the instant case.

Consumer action classes that have been found to be overbroad generally include members who were never exposed to the alleged misrepresentations at all. *See e.g.*, *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at * 5 (C.D. Cal. Apr. 12, 2012) (finding a class which includes consumers that were not exposed to the misleading statements to be overbroad)*; Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 926-28 (Cal. Ct. App. 2010) (finding the class overbroad where a majority of class members were never exposed to the alleged misrepresentations and thus there was absolutely no likelihood they were deceived

---

[5] These issues pervade into a number of the Rule 23 factors and this Order addresses them in a way most conducive to the facts of this case.

12cv3000

by the alleged false advertising).  In the instant case, Plaintiffs have alleged a widespread advertising campaign promoting the alleged misrepresentations as well as uniform labeling for each of the Class Products.  That the proposed class may include purchasers who did not rely on the misrepresentations and/or were satisfied with the products does not render the class "overbroad" where Maybelline has failed to demonstrate a lack of exposure as to some class members.

Maybelline further argues that because the class does not exclude purchasers who have already received refunds through Maybelline's Refund program, it is overbroad and not ascertainable.  The Court agrees.  As the UCL only permits recovery or restitution/disgorgement, for purchasers who have already received refunds, they have already been compensated well over any potential disgorgement.  These purchasers have no claims. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (2010) (finding a class not ascertainable where the definition includes persons who have received refunds, replacements, or who have not suffered any damages at all).  However, exclusion of these purchasers from the class definition would still not render certification appropriate.

The Court is satisfied that Plaintiffs' class definition is ascertainable in the sense that class membership can be determined based on an objective criterion. *Schwartz*, 183 F.R.D. at 279-80.  In the instant matter, that criterion will be whether members purchased either the SuperStay lipcolor of the SuperStay makeup.  However, the Court is concerned that Plaintiffs have failed to provide a reliable method of determining who the actual members of the class are, indeed as Maybelline contends, such a task may be impossible.

Though the class may be ascertainable in the sense that there are objective criteria for determining who its members are, it is not in the sense that members could actually ever be determined.  Plaintiffs have failed to show how it is "*administratively feasibile* to determine whether a particular person is a class member." *See Chavez*, 268 F.R.D. at 376 (emphasis added).  This inquiry overlaps with the "manageability" prong of Rule 23(b)(3)(D), in which a court assesses whether a class action is superior to other available methods of fairly and

efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *see also Red*, 2012 WL 8019257, at * 4.

Maybelline argues purchasers are unlikely to have documentary proof of purchase and Maybelline does not maintain a purchaser list or other identifying method.  In such a situation, the Court and the parties would necessarily rely on class members to self-identify. (Doc. No. 69 at 6.)  The Court shares Maybelline's concerns.  Indeed there are a number of cases that stand for the proposition that where a court has no way to verify if a purchaser is actually a class member, class certification may be improper.  *See e.g., Red*, 2012 WL 8019257, at *4 ("Whether analyzed under the implied ascertainability requirement, or, the superiority requirement of 23(b)(3) as informed by the manageability component imparted in 23(b)(3)(D), the issue of whether class members will be able to identify themselves to the Court in any even remotely verifiable way remains a significant legal and practical hurdle for Plaintiff's certification under 23(b)(3))"); *Hodes v. Int'l Foods*, 2009 WL 2424214, at *4 (C.D. Cal. July 23, 2009) (stating class does not meet the requirements of 23(b)(3) where court finds proposed class unmanageable given "the sheer number of members" causing concern about "how Plaintiffs will identify each member . . . . The likelihood that tens of thousands of class members saved their receipts as proof of their purchase of [the class product] is very low.").

Cases where self-identification alone has been deemed sufficient generally involve situations where consumers are likely to retain receipts, where the relevant purchase was a memorable "big ticket" item; or where defendant would have access to a master list of consumers or retailers.  *See Red*, 2012 WL 8019257, at *5 (explaining the three types of situations in which self-identification is deemed sufficient to render the class ascertainable and citing cases in support).  None of these factors exist in the instant case.  The Class Products are small-ticket items that cost between $10.00 to $13.00, it is extremely unlikely the average purchaser would retain receipts and perhaps even remember she purchased the specific SuperStay products versus other similar Maybelline or competitor products.

According to deposition testimony taken from named Plaintiffs, even they themselves did not retain receipts and had difficulty recalling many details about their purchases. (Doc. No. 69, Ex. 3, Algarin Dep. 49:20-51:5; Doc. No. 69, Ex. 4 Murdock Dep. 50:7-51:7.) Moreover, given that the class period extends three years for the lipcolor and five years for the makeup, it is doubtful that class members will precisely recall the items purchased, the quantity purchased, and the amount paid.[6]

However, a lack of ascertainability alone will not defeat class certification. *Red*, 2012 WL 8019257, at *6. As long as the class definition is sufficiently definite to identify putative class members, "the challenges entailed in the administration of this class are not so burdensome as to defeat certification." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (quoting *Ries*, 287 F.R.D. at 536). Thus, the Court continues to analyze whether the requirements of Rule 23(a) and 23(b) are met.

**E.    Rule 23(a)**

Rule 23(a) provides a class action may proceed only where: (1) the class members are so numerous that joinder is impracticable; (2) common questions of law or fact exist; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

1.    Numerosity and Adequacy

Maybelline does not dispute that the proposed class meets the numerosity requirement nor do they dispute whether named Plaintiffs and counsel meet the adequacy requirement. Accordingly, the Court is finds these two requirements satisfied.

---

[6] Maybelline cites to *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), in support of its argument that the lack of documentary proof of purchase should preclude certification. (Doc. No. 69 at 6-7). As Plaintiff notes, *Carrera* is not the law of this circuit. *See Forcellati v. Hyland's Inc.*, 2014 WL1410264, at *5 (C.D. Cal. Apr. 9, 2014) ("Given that facilitating small claims is 'the policy at the very core of the class action mechanism . . . , we decline to follow *Carrera*.") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). However, this Court does not rely on *Carrera* to reach its conclusion.

12cv3000

2.   <u>Commonality</u>

The commonality factor "requires the plaintiff to demonstrate that the class members have suffered the same injury, which does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551.  The "claims must depend on a common contention" and "that common contention . . . must be of such a nature that it is capable of class-wide resolution." *Id.*  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  The commonality requirement of Rule 23(a)(2) is construed less rigorously, for example, than the "predominance" requirement of Rule 23(b)(3). *Id.*  Indeed, for purposes of Rule 23(a)(2), even a single common question will suffice. *Dukes*, 131 S. Ct. at 2556.

Plaintiffs have identified several questions of law or fact common to the class: (1) whether the 24 hour/no transfer representation is true, or is misleading, or objectively reasonably likely to receive; (2) whether Maybelline engaged in false or misleading advertising; (3) whether Maybelline's alleged conduct violates public policy; (4) whether Maybelline's alleged conduct constitutes violations of the laws asserted; (5) the proper measure of the loss suffered by Plaintiffs and Class members; and (6) whether Plaintiffs and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.  Maybelline's contention, that the proposed class includes uninjured purchasers, is properly analyzed under the commonality requirements of Rule 23(a) and Rule 23(b)(3).

In light of the objective evidence showing that there was a substantial number of class members who were not misled by the 24 hour claim, whether Maybelline's conduct was false or misleading or likely to deceive is not subject to common proof on a classwide basis. According to survey results, purchasers had a variety of duration expectations.  Indeed, more purchasers expected the product to last less than 24 hours or had no specific duration

expectations. (Seggev Rep. ¶¶ 74-75, ¶¶ 94-95.)  Moreover, given the persuasive evidence presented on consumer expectations, the varying factors that influence purchasing decision, and consumer satisfaction, the Court finds that Plaintiffs have also failed to demonstrate that the elements of materiality and reliance are subject to common proof.

Expert evidence shows that materiality and reliance varies from consumer to consumer.  Accordingly, the Court finds that these elements are not an issue subject to common proof.  *See Johnson v. Harley-Davidson Motor Co. Group, LLC*, 285 F.R.D. 573, 581 (E.D. Cal. 2012) (finding materiality not subject to common proof where defendants offer persuasive evidence that there are numerous individualized issues as to whether the reasonable consumer would find the misconduct complained of material); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 503 (C.D. Cal. 2011) (finding the elements of materiality and reliance not subject to common proof where defendants put forth evidence that they would vary consumer to consumer).

Finally, the existence of economic injury is also not a common question as many purchasers were satisfied with the Class Products.  Expert Report of Keith R. Ugone ("Ugone Rep.") ¶35; (e.g., reviews say "This is best lipcolor ever . . . I will be back for more," "I love this [lipcolor] . . . I will order more in the future," and "I am so happy I tried this foundation . . . this is my new foundation."); *see Moheb v. Nutramax Laboratories Inc.*, 2012 WL 6951904, at *4 (C.D. Cal. 2012) (finding existence of economic injury not a common question because many purchasers found the class products were worth the amount paid and fully satisfied).

As for the other questions of law and fact posed, it is arguable that they may support a finding of commonality under the permissive standards governing this inquiry.  As noted above, commonality can be established by the presence of a single significant common issue.  However, Plaintiffs meet their downfall with the typicality requirement.

//

//

### 3.   Typicality

Typicality requires a determination as to whether the named plaintiffs' claims are typical of those of the class members they seek to represent. See Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal.1985). Typicality, like commonality, is a "permissive standard [ ]." *Hanlon*, 150 F.3d at 1020. Indeed, in practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n. 13, 102 S. Ct. 2364 (1982).  To assess whether or not named Plaintiffs' claims are typical, the Court examines "'whether other members have the same or similar injury.'" *Hanlon*, 976 F.3d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).  In other words, the inquiry is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to named plaintiffs, and whether other class members have been injured by the same course of conduct. *Id.*

The Court's analysis of the commonality requirement also informs the analysis for typicality.  Based upon the evidence presented, the named Plaintiffs' reliance on the alleged misrepresentations was not typical of other class members.

Accordingly, the Court finds Plaintiffs have not met the requirements of Rule 23(a). While this alone is sufficient to deny the motion to certify the class, the Court will continue with the analysis of the 23(b) classes.  The Court further concludes that class certification under either 23(b)(2) or 23(b)(3) is improper.

### F.   Rule 23(b)(2)

A class is proper under 23(b)(2) where the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2).  Class certification under Rule 23(b)(2) is appropriate only where the primary

relief sought is declaratory or injunctive." *Ellis*, 657 F.3d. at 986.  For classes certified pursuant to Rule 23(b)(2), monetary damages must be "merely incidental to the primary claim for injunctive relief. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001).

Plaintiffs argue that a class under 23(b)(2) is proper given Maybelline's uniform and widespread marketing, labeling, promoting, branding and advertising of its products; an action that is generally applicable to the entire class.  Plaintiffs further contend that any damages sought are merely incidental to the injunctive relief sought.  The Court disagrees.

 Given the facts of the instant case, the injunctive relief requested by Plaintiffs is not "appropriate respecting the class as a whole." *Dukes*, 131 S. Ct. at 2557.  Plaintiffs, and the portion of the class who purchased the Class Products expecting them to last 24 hours, are now well aware of the realities of the products.  Indeed, as Maybelline contends, with cosmetics such as the products at issue here, consumers can readily discern whether or not the claimed duration is true.  The Court is not dealing with products such as dietary supplements where the purported benefits are hard to ascertain or take time to actualize.  These consumers will not benefit from the injunctive relief as they cannot demonstrate a probability of future injury; if they know the "truth" they cannot be further deceived.  *See Moheb,* 2012 WL 6951904, at *6 (finding certification improper under Rule 23(b)(2) where Plaintiffs and the members of the class cannot demonstrate a probability of future injury as they no longer buy the challenged product).  Indeed, the only potential beneficiaries of any injunctive relief are future purchasers of the Class Products who have never purchased them before.  However, the current class definition excludes them.

Moreover, the restitution and disgorgement sought are not "incidental."  Named Plaintiffs cannot possibly benefit from injunctive relief as they are now (or at least should be) fully knowledgeable that the Class Products do not last 24 hours.  Thus monetary relief is necessarily their "primary concern." *Moheb*, 2012 WL 6951904, at * 7 (quoting *Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 250 (C.D. Cal. 2006); *see also Ries*, 287 F.R.D.

18

at 541 ("[A]lthough the monetary amount sought may be small per class member, in the aggregate they can hardly said to be incidental to the injunctive relief sought."). Rule 23(b)(2) "does not authorize class certification where each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2557. Monetary recovery may be granted only if it is sufficiently incidental to warrant certification under Rule 23(b)(2), such as statutory or punitive damages that do not turn on the individual circumstances of class members. By contrast, in the instant case Plaintiffs seek individual-ized monetary relief that would require assessment of each class member's claim based on how many products she purchased, which products she purchased, where she purchased, if she used a coupon, and so forth. *See Ries*, 287 F.R.D. at 541. In such a situation, the computation of the damages is not a mere "mechanical step" once rights are established. Certification is improper where, as here, the request for injunctive and/or declaratory relief is merely a foundational step towards a damages award which requires follow-on individual inquiries to determine each class member's entitlement to damages.

## G.     Rule 23(b)(3)

Certification pursuant to Rule 23(b)(3) requires Plaintiffs to establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.     Common Questions do not Predominate over Individual Inquiries

Rule 23(b)(3) predominance requires the class to be sufficiently cohesive to warrant adjudication by representation. *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This inquiry is more stringent than the commonality requirement of Rule 23(a)(2). Indeed, the analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)." *Hanlon*, 150 F.3d at 1022.

12cv3000

The Courts analysis with regards to commonality under Rule 23(a) is fully applicable in the analysis of predominance.  Given the number of individual purchasing inquiries   as well as the evidence showing materiality and reliance varies consumer to consumer, it is evident that common issues do not predominate. *See Moheb*, 2012 WL 6951905, at *7 (finding plaintiffs cannot demonstrate that common issues predominate where issues of reliance and injury require individualized inquiry); *Hodes*, 2009 WL 2424214, at *4 ("Courts in the Ninth Circuit and in California have regularly found that where [individual-ized purchasing] inquiries predominate over common questions of law or fact, courts may refuse to certify a class action.").  Additionally, and of great importance, is the fact that Plaintiffs have failed to demonstrate sufficient evidence showing that any damages claimed to stem from the alleged misconduct.

Under the UCL, a court may grant restitution as a form of relief.  This relief is an equitable remedy and its purpose is to restore the status quo by returning to the plaintiff funds in which she has an ownership interest. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (Cal. 2003).  Under California law, the two purposes are to return money unjustly taken from the class and deter the defendant from engaging in future violations of the law. *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 697-98 (Cal. Ct. App. 2006). After *Comcast v. Behrand*, a party seeking certification must offer a class-wide means for calculating damages.  133 S. Ct. 1426, 1433 (2013).

The Ninth Circuit has acknowledged that under the *Comcast* decision, a plaintiff must be able to show that damages stemmed from the defendant's actions that created the legal liability. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).  While a court of equity "may exercise its full range of powers in order to accomplish complete justice between the parties," the restitution awarded must be a "quantifiable sum" and must be supported by substantial evidence. *Colgan*, 135 Cal. App. 4th at 698.  The restitution awarded "must correspond to a measurable amount representing the money that the defendant has acquired from each class member by virtue of its unlawful conduct." *Astiana*

*v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *11 (N.D. Cal. Jan 7, 2014) (citing *Colgan*, 135 Cal. App. 4th at 697-98).

Plaintiffs propose the "price premium" method of determining classwide damage, arguing that California law permits plaintiffs to seek recovery of a price premium regardless of whether plaintiffs are able to quantify the premium that was paid or the identity of other products sold at a lower price that did not bear the alleged deceptive representations. (Doc. No. 63 at 22.)  Here, the premium represents the amount consumers overpaid for the 24 hour/no transfer claim.  Plaintiffs thus contend that there damage theory is "simple," "damages are the difference between the SuperStay 24 HR Products and other lipsticks, lip glosses and foundations made by Maybelline and its competitors without the 24 HR/no transfer representation but that are otherwise comparable." (Doc. No. 70 at 7-8.)  As Plaintiffs have stated, Maybelline charges $1.00-$3.00 more for the Class Products than its comparable products that do not bear the 24 hour/no transfer claims.

As an initial matter, it is not intuitively obvious at all that the 24 hour/no transfer claim commands a premium of $1.00-$3.00.  Indeed, it is pure speculation on the part of Plaintiffs.  The Court can fathom a number of reasons why the Class Products may be priced as they are.  For example, perhaps it is due to a higher quality of ingredients, perhaps it is because of the selection of colors offered, or perhaps it reflects the costs Maybelline expended in the research and development of the products.  Plaintiffs' method of using comparable products is inconsistent with the law.  To establish that any difference in price is attributed solely to the alleged misrepresentation, the Court must use a product, exactly the same but without the 24 hour claim.  As Maybelline stated, the Court would have to control and neutralize all other product differences.  Such a task is nearly impossible as no two products are completely identical.

As the court in *Ben & Jerry's* explained, one method of quantifying the amount of restitution to be awarded is to compute the effect of the unlawful conduct on the market price of the class products. 2014 WL 60097, at *12. This measure contemplates the

"production of evidence that attaches a dollar value to the 'consumer impact or advantage' caused by the unlawful practice. *Id.* (quoting *Colgan*, 135 Cal. App. 4th at 700). Expert testimony may be necessary to establish the price inflation attributable to the challenged practice. *See id.* As it stands now, Plaintiffs have not offered a method that would attach a dollar value to the alleged misrepresentations other than the general assertion - it exists and therefore it must be so. The inadequacies are readily apparent as Plaintiffs' theory does not even attempt to isolate the amount attributed solely to the alleged misrepresentation. Plaintiffs have failed to produce any expert testimony that demonstrate a gap between the market price of the SuperStay 24 HR products and the price they purportedly should have sold at without the 24 hour/no transfer representations. As such, the Court cannot conclude that Plaintiffs have met their burden of showing a classwide method of awarding relief consistent with their theory of liability.

Moreover, Maybelline contends that the proposed price premium method is inappropriate given the substantial variability in retail prices among the Class Products and competing products. (Doc. No. 69 at 18-19.) The Court shares this concern. Maybelline does not sell retail and does not set retail prices. Establishing a higher price for a comparable product would be difficult where prices in the retail market differ and are affected by the nature and location of the outlet in which they are sold and/or the use of promotions and coupons. ("Ugone Rep." ¶¶ 7-8, ¶¶37-51); *see Ben & Jerry's*, 2014 WL 60097, at *12. Although, Plaintiffs' rebuttal expert, Keith A. Reutter has also proposed the "wholesale price premium," which compares the wholesale prices of the Class Products and comparable products to represent the amount of injury, this does not assuage the issue of variability. Plaintiffs have failed to produce any data or other evidence that rebuts Maybelline's contention that wholesale prices are also affected by the same variability problems. The Court cannot simply assume that all retailers throughout California purchase the Class Products and competing products at the sale wholesale price. Even if price variation problems did not invade the analysis, Plaintiffs have still failed to propose a viable

method supported by evidentiary proof of awarding relief that is consistent with Plaintiffs' theory of liability.

### 2. The Class is Not Superior

Rule 23(b)(3) requires courts to find class litigation is superior to other methods of adjudication before certifying the class.  Maybelline argues that its out-of-court Refund Program is a superior alternative.  The Court questions the appropriateness of comparing such a private method of resolution.

Based on the language of Rule 23(b)(3) which requires a class action to be "superior to other available methods for . . . *adjudicating* the controversy," this determination involves a comparison of the class action as a procedural mechanism to available alternatives. Newberg on Class Actions, §4:64 (5th ed.)   In other words, Rule 23(b)(3) asks a court to compare the class action to other types of court action.  Although the Court is mindful of cases which have considered whether the class action is superior to other "non-judicial" methods of handling the controversy[7], the Court is wary of stepping outside the text of Rule 23(b)(3).

However, included in the superiority analysis is whether the proposed class action would be manageable.  "Courts are 'reluctant to permit action to proceed' where there are 'formidable . . . difficulties of distributing any ultimate recovery to the class members,' because such actions 'are not likely to benefit anyone but the lawyers who bring them.'" *Moheb*, 2012 WL 6951904, at*8 (quoting *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 164 (1974)).  The Court has already concluded that the class is unmanageable and that common

---

[7] *See e.g., In re Conagra Peanut Butter Prod. Liability Lit.*, 251 F.R.D. 689, 699-719 (N.D. Ga. 2008) (defendant issued full refunds); *In re Phenylpropanolamine Prod. Liability Lit.*, 214 F.R.D. 615 (W.D. Wash. 2003) (defendent issued refund and product replacements).

Indeed, these private methods of resolution have a number of appealing attributes, such as affording class members better remedies than a class action and not having to divert a substantial amount of the recovery to line the pockets of attorneys.

issues do not predominate, accordingly the class action is not a superior method of adjudicating the controversy.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is DENIED. Counsel for the Parties are ordered to contact Judge Bartick's Chambers within fourteen days of this Order to set a case management conference for final scheduling of the case.


IT IS SO ORDERED.


DATED:  May 12, 2014


Hon. Anthony J. Battaglia
U.S. District Judge